RODRIGO RIVERA, Plaintiff-Appellant, v. MAHOGONY CORPORATION *et al.*, Defendants (Fred A. Gilford Leasing Co., Defendant-Appellee).

First District (1st Division)   No. 85—1940

Opinion filed May 27, 1986.—Rehearing denied June 25, 1986.

Steinberg, Polacek & Goodman, of Chicago (Edward C. Erwin, of counsel), for appellant.

Irene B. Cramer, of Isham, Lincoln & Beale, of Chicago (Michael L. Daugherty, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Rodrigo Rivera, appeals from the entry of summary judgment in the circuit court of Cook County in favor of Fred A. Gilford, Inc., d/b/a Fred A. Gilford Leasing Company (Gilford), and

against Rivera in his suit seeking to impose strict liability in tort against Gilford. The plaintiff claimed that a plastic molding machine, model No. B—75, manufactured by Baker Plastics Company (Baker), and sold by Gilford, was unreasonably dangerous and caused plaintiff severe personal injuries. Gilford had purchased the machine from Baker, leased and eventually sold it to plaintiff's employer, Borse Plastic Products Corporation (Borse). In granting Gilford's motion for summary judgment, the trial court ruled that Gilford was a "financial" lessor, and consequently, not in the distributive chain of the product. The court ruled that the lease here was primarily a financial transaction where money was provided by one who was not in the business of selling or placing products into the stream of commerce to a lessee, who was a borrower, to enable him to purchase the product. Accordingly, the court found that the defendant, Gilford, was not subject to strict liability under Illinois law and was entitled to summary judgment as a matter of law. The plaintiff, contending that the trial court erred in its interpretation of the lease, appeals to this court.

■ In reviewing an order granting summary judgment, we must determine whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); see *Skarski v. Ace-Chicago Great Dane Corp.* (1985), 138 Ill. App. 3d 301, 304, 485 N.E.2d 1312; *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 231, 450 N.E.2d 756.) Affidavits filed in support of a motion for summary judgment, if not contradicted by counteraffidavits, are to be "taken as true, notwithstanding the existence of contrary averments in the adverse party's pleadings." (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) Since the plaintiff failed to file any counteraffidavits, we consider only the affidavits and exhibits filed by the defendant to determine whether Gilford was entitled to judgment in its favor as a matter of law.

■ The affidavits filed by the defendant establish that Gilford was in the business of financing the acquisition of equipment by entering into arrangements with its customers which were styled as leases. Gilford was not, as the affidavits indicate, in the business of selling the type of plastic molding machine purchased here, nor did it have any knowledge or experience concerning the manufacture, sale or distribution of such machines. Plaintiff's employer, Borse, selected the particular machine and obtained both a price quotation and an offer of

sale from the manufacturer. It was the decision of Borse's president to finance this acquisition from the manufacturer, Baker, by executing a lease with Gilford. At the same time the defendant and Borse entered into the lease agreement, Borse obtained an option to purchase the machine when the lease expired. Gilford purchased the machine from Baker, filed its financing statement with the Secretary of State pursuant to the Uniform Commercial Code and shipped the machine directly to Borse.

According to the terms of the 60-month lease agreement, Borse had the duty to inspect the machine and was responsible for keeping the machine in good repair. Additionally, Borse assumed the risk of loss and damage from any and every cause whatsoever, and was required to insure the equipment. Gilford leased the machine without making any warranties, express or implied, regarding the equipment's condition, merchantability or fitness for any particular purpose. While the title to the machine remained in Gilford, Gilford never obtained possession or control of the machine.

At the expiration of the lease period, Borse exercised its option and purchased the machine. The plaintiff, Rodrigo Rivera, was injured almost five years after Borse exercised its option and purchased the machine.

This case presents apparently an issue of first impression, *i.e.*, whether leasing arrangements which are entered into to provide financing for the purchase of a product are within the distributive chain of the product leased and, therefore, subject to the imposition of strict tort liability. The basis for holding all persons in the distributive chain liable in a products liability action for injuries resulting from a defective product including suppliers, distributors, wholesalers, and retailers has recently been set forth in *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 206, 454 N.E.2d 210, where the court said:

> "[I]mposition of liability upon these parties [all persons in the distributive chain] is justified on the ground that their position in the marketing process enables them to exert pressure on the manufacturer to enhance the safety of the product. [Citation.] Regardless of the nature of the commercial transaction and even though he does not create the defect, a seller who puts a defective product into the stream of commerce may still be held strictly liable to an injured user. [Citation.]"

Commercial lessors, *i.e.*, lessors in the business of leasing equipment, have been held to be in the original chain of distribution by our supreme court in *Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10,

15, 383 N.E.2d 951, because they reaped a profit from placing the product into the stream of commerce and, thus, were subject to strict liability in tort. See *Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, 274 N.E.2d 178.

The plaintiff, Rivera, asserts that the defendant-lessor, Gilford, should be treated as any other lessor, *i.e.*, an entity subject to strict products liability. He contends that by reason of Gilford's role in helping to place the machine into the stream of commerce, Gilford is clearly in the machine's distributive chain, and, therefore, the imposition of strict liability upon it is mandated just like it is in the case of commercial lessors. Additionally, the plaintiff claims the imposing of strict liability on Gilford here will further the public policy supporting such liability. On the other hand, the defendant contends that the characteristics of a "financial" lessor and the circumstances surrounding Gilford's minimal connection with the machine support the trial court's entry of summary judgment in its favor.

There is a distinction between what has been called the "commercial" or "conventional" lessor and the "financial" lessor. A commercial lessor rents the product for a short period of time, generally less than its expected useful life, with the expectation that the product will be returned at the end of the lease period. On the other hand, a financial lessor purchases the product for his customer whose goal is to own the product, leases it to his customer, and does not expect that the product will be returned, but rather expects that the product will be purchased at the end of the period by his customer or that its useful life will have been exhausted. See Hawkland, *The Impact of the Uniform Commercial Code on Equipment Leasing*, 1972 U. Ill. L.F. 446; Comment, *Finance Lessor's Liability for Personal Injuries*, 1974 U. Ill. L.F. 154.

While Illinois courts have not considered the distinguishing characteristics of a financial and commercial lessor and their consequential effect on a lessor's liability, some Federal courts and other jurisdictions have. In *Abco Metals Corp. v. J. W. Imports Co.* (N.D. Ill. 1982), 560 F. Supp. 125, 131, *aff'd sub nom. Abco Metals Corp. v. Equico Lessors, Inc.* (7th Cir. 1983), 721 F.2d 583, the United States district court described a financial lessor, stating:

"[He] does not actually provide the equipment to the lessee, but rather provides the money which allows the user of already selected equipment to purchase it. To a substantial extent, a financial lessor may be analogized to a bank that loans money to its clients. Rather than simply loaning the money for the purchase to the ultimate user of the equipment, the transaction is

set up as a 'lease,' with the lessor 'purchasing' the equipment for the specific purpose of 'renting' it to the user. Certain tax consequences often provide the incentive for so structuring the transaction. Normally, the lessor has no familiarity with the particular equipment involved, and rarely does the lessor intend to take possession of the equipment when the lease term is completed. Therefore, contemporaneously with entering into the lease agreement, the parties generally execute an option whereby the user can purchase title to the equipment from the lessor at the end of the lease period for an amount less than the then expected value of the equipment. [Citation.]"

The other courts that have considered this issue have defined a "financial" lessor in a similar fashion. See *Cole v. Elliott Equipment Corp.* (5th Cir. 1981), 653 F.2d 1031; *Nath v. National Equipment Leasing Corp.* (1980), 282 Pa. Super. 142, 422 A.2d 868, *aff'd* (1981), 497 Pa. 126, 439 A.2d 633.

Applying this description to the facts of this case, we find that the defendant, Gilford, is clearly a financial lessor, and that the trial court was correct in its assessment that this was a financial arrangement in which money was being borrowed rather than a purchase, sale or ordinary lease of a machine. Here, Borse had already selected the specific model machine, B—75, that it desired to acquire from Baker. Borse sought the necessary funding from Gilford who, rather than directly loaning the money to Borse, simply structured the transaction as a lease with Gilford purchasing the machine and renting it to Borse. Additionally, it was clear that Gilford was not familiar with this type of equipment since it neither was in the business of selling plastic-molding machines nor did it have any knowledge or experience in the manufacture, sale or distribution of such equipment. Finally, Gilford, at the time of entering into the lease agreement, simultaneously gave Borse an option to purchase the machine for a nominal price at the end of the lease term. See Hawkland, *The Impact of the Uniform Commercial Code on Equipment Leasing,* 1972 U. Ill. L.F. 446.

■ In situations such as this where the lessor, as Gilford here, is a financial lessor, we do not believe that the public policy considerations supporting imposition of strict liability in tort would be furthered by subjecting the lessor to such liability. The lessee, Borse, had already selected the manufacturer and the particular machine it wanted before contacting Gilford. Under these circumstances, it cannot be said that Gilford was in any position to exert pressure on Baker to enhance the safety of the B—75 machine, or that Gilford

took any part in the marketing or production of that equipment. We also agree with the Seventh Circuit's statement that "[a]ny profit it [the financial lessor] reaped [the financial lessor] derived from having placed its money, and not the defective product, into the stream of commerce." (*Abco Metals Corp. v. Equico Lessors, Inc.* (7th Cir. 1983), 721 F.2d 583, 585, *aff'g Abco Metals Corp. v. J. W. Imports, Inc.* (N.D. Ill. 1982), 560 F. Supp. 125.) Thus, the factors, as our supreme court noted in *Hammond*, which normally form the basis for imposing liability on one in the distributive chain, clearly are not present here. See Comment, *Finance Lessor's Liability for Personal Injuries*, 1974 U. Ill. L.F. 154; accord, *Nath v. National Equipment Leasing Corp.* (1981), 497 Pa. 126, 439 A.2d 633.

Therefore, under the facts of this case, we hold that Gilford was a financial lessor, and as such, was not liable in strict tort and properly entitled to judgment in its favor as a matter of law.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.