LAUREN BEATTIE, Adm'r of the Estate of Marshall Beattie, Plaintiff-Appellant, v. ROGER LINDELOF, d/b/a D&R Trucking, *et al.*, Defendants (Lenertz System *et al.*, Defendants-Appellees).

First District (2nd Division)   No. 1—92—2107

Opinion filed March 16, 1994.—Rehearing denied May 4, 1994.—Modified opinion filed May 10, 1994.

Hinshaw & Culbertson, of Chicago (Stephen R. Swofford, David H. Levitt, and Kristin E. Hutson, of counsel), for appellant.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Frank Calabrese, Michael R. LaBarge, and Lloyd E. Williams, Jr., of counsel), for appellee Lenertz System.

Stellato & Schwartz, Ltd., of Chicago (Esther Joy Schwartz, James Scott McMahon, and Donald E. Stellato, of counsel), for appellee Glenn Holmes.

Aronson, Sanders, Smith & Cross, of Chicago (Charles W. Cross, of counsel), for appellee Dahlke Trailer Sales and Leasing, Inc.

Benjamin & Shapiro, Ltd., of Chicago (Fred I. Benjamin and Paul R. Keddelman, of counsel), for appellee Allstate Finance & Leasing Corporation.

Querrey & Harrow, Ltd., of Chicago (Mary T. Nagel and Michael Resis, of counsel), for appellee Brookdale Leasing Corporation.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:
Following Marshall Beattie's fatal rear end collision with defendant Roger Lindelof's semi-trailer truck, plaintiff Lauren Beattie, as administrator of the estate, filed a lawsuit pursuant to the Illinois Wrongful Death Act (Ill. Rev. Stat. 1989, ch. 70, par. 1 *et seq.* (now codified as 740 ILCS 180/1 *et seq.* (West 1992))), against Lindelof and several other defendants, including the manufacturer of the truck and all of its previous owners. The complaint alleged that the absence of an adequate rear end protection device attached to the truck caused Beattie's enhanced injuries which resulted in his death. The four-count complaint sounded in negligence, strict products liability, and *res ipsa loquitur.* Thereafter, the circuit court dismissed the counts against defendant Allstate Finance & Leasing Corporation (Allstate) and granted summary judgment to defendant Brookdale Leasing Corporation (Brookdale), on the grounds that both Allstate and Brookdale were not commercial lessors, but merely financial lessors who were not subject to liability. The court then dismissed the negligence and strict liability claims against three of the prior owners, defendants Glen Holmes (Holmes), Dahlke Trailer Sales &

Leasing, Inc. (Dahlke), and Lenertz System (Lenertz), on the grounds that they were merely "truckers" rather than in the business of truck sales. The court also dismissed the strict liability count against Dahlke on the grounds that as an intermediate distributor, it need only "file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage." (Ill. Rev. Stat. 1991, ch. 110, par. 2—621(a) (now codified as 735 ILCS 5/2—621(a) (West 1992)).) Finally, the court ruled that plaintiff failed to state a cause of action for *res ipsa loquitur* and dismissed that count as to all defendants and denied plaintiff's request for leave to amend her complaint. The court then found that there was no just reason to delay enforcement of its rulings, and included language pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) in its orders to allow an interlocutory appeal.

On appeal, plaintiff contends that (1) the court improperly dismissed the negligence count against Holmes, Dahlke, and Lenertz because the complaint alleged that any of the defendants may have caused the defect; (2) the court erred when it ruled that she failed to state a cause of action based on *res ipsa loquitur*; (3) the affidavits submitted by Allstate and Brookdale were insufficient to establish that they were merely finance lessors as opposed to commercial lessors; (4) the court erroneously dismissed the strict liability count against Holmes, Dahlke, and Lenertz on the basis that they were not in the business of sales but rather in the business of trucking; and (5) the court inappropriately dismissed the strict liability count against Dahlke pursuant to section 2—621 of the Code of Civil Procedure because the complaint alleged that Dahlke created the defect rather than simply distributing it through the stream of commerce.

At about 1:25 a.m. on December 8, 1988, Marshall Beattie was traveling eastbound "at a high rate of speed" on Interstate 90 near Schaumburg when he collided into the rear of Lindelof's truck. Beattie's car continued to travel underneath the trailer portion of the truck until the rear portion of the trailer bed came into the passenger compartment of the car, which was then dragged onto the shoulder. When rescue workers arrived, Beattie was "extricate[d]" from his car and taken to Humana Hospital, where he was pronounced dead on arrival at 2:11 a.m. An autopsy was performed and the cause of death was determined to be the multiple injuries Beattie sustained in the accident, including a 1.7-inch-deep laceration to the forehead. Toxicological tests also revealed positive results for ethanol in Beattie's blood, urine, and bile.

On September 21, 1990, plaintiff filed a one-count complaint

against Lindelof,[1] alleging that he was negligent because he "owned and operated a tractor trailer with a rear end protection device which was not substantially constructed or firmly attached." Thereafter, plaintiff joined as defendants every previous owner of the tractor trailer as well as the manufacturer and original seller, and the company Lindelof was working for when the accident occurred. Her fourth amended complaint, filed September 19, 1991, included four counts. Count I alleged negligence resulting in Beattie's enhanced injuries on the part of Lindelof and defendant Valley Express, who had entered into a "trip lease" with Lindelof and held the ICC permit displayed by him at the time of the accident.

Count II alleged strict products liability against the manufacturer and each successive owner of the truck until it was purchased by Lindelof. Plaintiff maintained that the truck was defective because it did not have a "substantially constructed and firmly attached" rear end protection device as required by the Federal Interstate Commerce Commission's regulations. (49 C.F.R. § 393.86(e) (1992).) She asserted that such defect was created by either: defendant Fruehauf Corporation and Fruehauf Trailer Sales (collectively Fruehauf), the manufacturer and original seller; Lenertz, the original purchaser in 1979; Allstate, who purchased it from Lenertz in September 1983; Holmes, who purchased it from Allstate in February 1984; Dahlke, who took the truck from Holmes in March 1985 on consignment until it was sold on July 31, 1985; or Brookdale, who purchased it from Dahlke but leased it to Lindelof until October 3, 1988, when he purchased the truck for $1,000.

Count III alleged negligence against the same defendants named in count II for failing to install or properly maintain an adequate rear end protection device. Finally, count IV alleged negligence against all defendants on the basis of res ipsa loquitur. Plaintiff alleged that "[a]bsent negligence on the part of one or more of the named [d]efendants ***, the vehicle operated by MARSHALL BEATTIE would not have been permitted to travel underneath the trailer as it did and MARSHALL BEATTIE would not have suffered the

---

[1]Lindelof filed a countercomplaint against Beattie's estate, alleging that he suffered physical and property injuries when Beattie "carelessly and negligently" collided into the rear end of his truck. Thereafter, Lindelof entered into a settlement and release with Beattie's employer, the owner of the car, for either "Seventeen thousand one hundred thirty-two and 15/100 Dollars" or "$15,132.15." Plaintiff filed a motion to dismiss the counterclaim, asserting that the release extinguished any further rights of recovery. The record fails to indicate any resolution of the motion.

extensive injuries he did in the December 8, 1988 accident, leading to his death."

Thereafter, Dahlke, Lenertz, and Holmes each moved to dismiss counts II, III, and IV on the grounds that under *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307, no duty exists to maintain a vehicle with which it is safe to collide. Dahlke also moved to dismiss count II pursuant to section 2—621 of the Code of Civil Procedure. Allstate moved to dismiss the counts against it on the grounds that it was merely a finance company which simply held "finance papers" on the truck. The motion was supported by an affidavit from a manager of Allstate which stated that he was "familiar *** with the transactions complained of in this cause of action" and that at no time did Allstate operate the truck, have physical access to it, or make any physical alterations. Finally, Brookdale moved for summary judgment on the grounds that it too was merely a financial lessor. Brookdale's motion was supported by an affidavit from the company's secretary, which stated that on the same day the truck was purchased from Dahlke, it was leased to Lindelof for a three year term at a rate of $590 per month plus a $1,000 residual at the end of the lease. The affidavit further stated that Brookdale sold the truck and transferred title to Lindelof on October 3, 1988, and that it never took possession of the truck or made any physical alterations to it, either before or after that date.

At the hearing on the various motions, the court first ruled that although the affidavits were "somewhat terse" it was clear that both Allstate and Brookdale were merely financial lessors, to which liability could not attach. Accordingly, the court dismissed all counts against Allstate with prejudice and granted Brookdale summary judgment on all counts pertaining to it. The court then granted Dahlke's section 2—621 motion to dismiss, finding that plaintiff offered nothing other than the "broad statements" of the complaint to counter Dahlke's assertion that it was merely an intermediate distributor that did nothing to alter the vehicle.

Next, the court granted Dahlke's, Holmes', and Lenertz's motions to dismiss counts II and III against them on the grounds that they were merely truckers rather than in the business of being sellers. The court also dismissed count IV as to all defendants, finding that this case did not present an instance of *res ipsa loquitur*, because a situation could still exist where a substantially constructed device would give way if struck with enough force. Later, the court denied plaintiff leave to amend count IV and granted the various motions for Rule 304(a) (134 Ill. 2d R. 304(a)) language. The court did refuse, however, to dismiss count I against Lindelof and Valley Express, or

to dismiss counts II and III against Fruehauf. The court also stated that "the negligence counts are in strictly on the basis of the federal regulation." This appeal followed.

## I

Plaintiff first contends that the court erred in dismissing the negligence count against defendants Dahlke, Holmes, and Lenertz because the complaint alleged that one of the defendants created a dangerous condition when the rear end protection device was improperly installed or negligently maintained, repaired, or modified. She asserts that because Illinois law allows her to join all defendants who may be liable and let the jury determine the facts (see Ill. Rev. Stat. 1991, ch. 110, par. 2—405(c) (now codified as 735 ILCS 5/2—405(c) (West 1992)) (authorizing alternative pleading when "the plaintiff is in doubt as to the person from whom he or she is entitled to redress")), it was inappropriate for the court to dismiss those three defendants when she did not know which defendant was responsible for creating the defective condition. She maintains that the court's reliance on the fact that defendants were not in the business of selling trucks was irrelevant to the issue of negligence.

In response, Dahlke, Lenertz, and Holmes each assert that because Illinois law is clear that no duty exists for a manufacturer "to design a vehicle with which it is safe to collide" (*Mieher*, 54 Ill. 2d at 543), no such duty can exist on the part of a subsequent purchaser or distributor.

In *Mieher*, the plaintiff, as executor of an estate, brought a wrongful death action against the driver and the manufacturer of a semi-trailer truck which the decedent rear ended as it was making a right turn off a highway. The decedent died as a result of injuries she received when her automobile ran under the rear of the truck and the truck bed penetrated the windshield of her car. The plaintiff alleged that the manufacturer negligently designed the truck because "it did not attach to the rear of it a bumper, fender, or shield" and the failure to provide such a protective device made the truck unsafe because a vehicle colliding with its rear would proceed unimpeded under the bed of the truck. The circuit court found that the complaint did not state a cause of action for strict liability and struck the counts against the manufacturer. The appellate court agreed that the count failed to allege strict liability, but found that the complaint did sufficiently state a cause of action for common law negligence and reversed the circuit court's order. Thereafter, the supreme court reversed the appellate court.

The supreme court first noted that the appellate court was correct

that the complaint failed to state a cause of action for strict liability. (*Mieher*, 54 Ill. 2d at 541.) The court then stated that the issue presented before it was whether or not a duty existed on the part of a manufacturer to design a vehicle with which it is safe to collide. (*Mieher*, 54 Ill. 2d at 543.) Despite authority which recognized a duty on manufacturers to design vehicles to avoid an unreasonable risk of injury to the user in the event of a collision (see, *e.g.*, *Larsen v. General Motors Corp.* (8th Cir. 1968), 391 F.2d 495, 502 ("While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts")), the supreme court rejected the assertion that such a duty includes "every consequence which might possibly occur." (*Mieher*, 54 Ill. 2d at 544 ("in retrospect almost nothing is entirely unforeseeable").) Instead, the court held that while the injury complained of may have been foreseeable, "in a sense," the alleged design defect did not create an unreasonable danger or risk of injury. (*Mieher*, 54 Ill. 2d at 545.) The court then stated that neither public policy nor social requirements required the imposition of such a duty. *Mieher*, 54 Ill. 2d at 545.

■ In the instant case, plaintiff alleged negligence on the part of Lenertz, Holmes, and Dahlke (as well as all the other defendants) because they failed to properly install or maintain, repair, alter, or modify an adequate rear end protection device. Because this allegation is effectively the same as the plaintiff's allegation in *Mieher*,[2] we find that the circuit court was correct in dismissing defendants

---

[2]Although not raised in her brief, plaintiff's counsel asserted at oral argument that the case of *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460, limited the effect of *Mieher*. In *Buehler*, one of the plaintiffs was a witness to an accident who was injured when he attempted to rescue the occupants of a burning car after it was struck in the rear by another vehicle. The plaintiffs sued the driver of the second vehicle for negligence and the manufacturer of the plaintiffs' car on the grounds of defective design of the gas tank. A jury found in favor of the plaintiffs and against the defendants. Following affirmance by the appellate court, the manufacturer argued to the supreme court that the holding in *Mieher* precluded a finding of liability for the injuries suffered by the plaintiffs, including the witness. The court disagreed, stating that because rear end collisions were "frequen[t]," the risk of fire spreading into the passenger compartment due to defective design of the gas tank was foreseeable. (*Buehler*, 70 Ill. 2d at 60.) The court then cited *Larsen* and the cases that followed it to support its holding.

While we agree that *Buehler* stands for the proposition that rear end collisions are common, we cannot agree that *Buehler* authorizes a cause of action such as the one here. In *Buehler*, the plaintiffs were the occupants of the vehicle and a third party who was injured when he attempted to rescue

because if no common law duty exists to design a vehicle with which it is safe to collide, then no such duty could exist to maintain one either.

Nevertheless, plaintiff also tries to establish that such a duty does exist pursuant to a Federal regulation. Section 339.86 provides that every motor vehicle manufactured after December 31, 1952, with a rear end clearance of 30 inches above the ground "shall be provided with bumpers or devices" which "shall be substantially constructed and firmly attached." (49 C.F.R. § 393.86(e) (1992).) We find, however, that this administrative mandate imposes no duty on defendants Lenertz, Holmes, and Dahlke.

According to section 393.1, section 393.86 applies only to those employers and employees who "operate a commercial motor vehicle, or cause or permit it to be operated." (49 C.F.R. § 393.1 (1992).) Thus, the administrative regulation does not create any duty on prior owners if a subsequent accident results.

II

Plaintiff next contends that the circuit court erred when it ruled that she failed to state a cause of action based on the doctrine of *res ipsa loquitur* on the ground that a situation could exist where the rear end protection device gives way without negligence. She maintains that she need not exclude all causes of injury other than negligence in order to utilize the doctrine as a basis for a claim. (See *Robles v. Chicago Transit Authority* (1992), 235 Ill. App. 3d 121, 132, 601 N.E.2d 869, *appeal denied* (1992), 147 Ill. 2d 637, 606 N.E.2d 1235 (stating that plaintiff utilizing *res ipsa loquitur* need not plead the absence of contributory negligence).) Instead, she asserts that in order to make out a *prima facie* case under the doctrine, she need only demonstrate that (1) the instrumentality causing the injury was under the control of the party charged with negligence at the time of creation of the injurious condition; and (2) the accident occurred

---

them. Under *Larsen* and its progeny, there could be no question that the manufacturer owed a duty to the user of a vehicle. Moreover, that duty was extended to the rescuer under the "rescue doctrine." (*McGinty v. Nissen* (1984), 127 Ill. App. 3d 618, 620, 469 N.E.2d 445 ("The effect of the rescue doctrine is to extend for the benefit of the rescuer the liability which the defendant may have toward the person he has placed in peril").) In contrast, the decedent here was a person who collided into the vehicle rather than an occupant or an attempted rescuer of an occupant and the holding of *Mieher* is clear that no duties are owed to such persons. Accordingly, we find that the *Buehler* holding has no effect in this case.

under such circumstances that in the ordinary course of events it would not have occurred if the party charged with negligence had used proper care while the instrumentality was under his control. See *Imig v. Beck* (1986), 115 Ill. 2d 18, 26, 503 N.E.2d 324.

■ Although plaintiff's assertions are true, she fails to recognize that rather than being a separate legal theory, *res ipsa loquitur* is simply "a type of circumstantial evidence which permits the trier of fact to infer negligence when the precise cause of the injury is not known." (*Wilson v. Michel* (1991), 224 Ill. App. 3d 380, 386, 586 N.E.2d 333, *appeal denied* (1992), 145 Ill. 2d 645, 596 N.E.2d 638.) Thus, because *res ipsa loquitur* is merely an alternate method of proving negligence, no cause of action can lie under the doctrine unless a duty of care is owed by the defendant to the plaintiff. (*Spidle v. Steward* (1980), 79 Ill. 2d 1, 5, 402 N.E.2d 216; *Wilson*, 224 Ill. App. 3d at 386.) Accordingly, because defendants owed no duty of care to Beattie (see part I above), it is impossible for plaintiff to make out a *prima facie* case of *res ipsa loquitur* against them. We therefore find that the *res ipsa loquitur* count was properly dismissed against those defendants who could not be found liable under *Mieher*.

### III

■ Plaintiff next contends that the circuit court erred when it granted Allstate's motion to dismiss and Brookdale's motion for summary judgment on the grounds that they were merely financial lessors who never had control of the vehicle. We note that we need not address the merits of plaintiff's contention, however, because as we have already stated, no duty exists to maintain a vehicle with which it is safe to collide. Thus, because we may affirm the judgment of the circuit court for any reason warranted by the record regardless of whether it was relied upon by the circuit court (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9), we hold that both Allstate and Brookdale were properly discharged as defendants from this case. Furthermore, even if we were required to reach the substance of plaintiff's contention, her arguments would be unavailing.

Plaintiff first asserts that Allstate's section 2—619 motion to dismiss was improperly granted because Allstate simply contested the ultimate factual allegations of the complaint rather than providing affirmative matter which negated the allegations. She maintains that Allstate failed to establish that it was merely a financial lessor as opposed to a commercial lessor because the affidavit supporting the motion by the manager did not state that the facts were from the affiant's personal knowledge. She also points out that

Allstate failed to attach the documentary evidence necessary under Supreme Court Rule 191 (134 Ill. 2d R. 191(a)). Allstate does not respond to these assertions.

Illinois law is clear that no strict tort liability can exist for a financial lessor because any profit derived from the product results from placing its money rather than the defective product into the stream of commerce. (*Rivera v. Mahogony Corp.* (1986), 145 Ill. App. 3d 213, 218, 494 N.E.2d 660.) A financial lessor is one who purchases the product and leases it to a customer without expecting it to be returned, but expects that the product will be purchased at the end of the lease or that its usefulness will have been exhausted. (*Rivera*, 145 Ill. App. 3d at 216.) In contrast, a commercial lessor merely rents the product for a short period of time with the expectation that the product will be returned at the end of the lease period. *Rivera*, 145 Ill. App. 3d at 216.

In the instant case, Allstate provided an affidavit by one of its managers to support its motion to dismiss. The affidavit states that the affiant was a manager "at all times relevant to th[e] cause of action" and was "familiar" with the relevant transactions and that Allstate never operated or had physical access to the vehicle when Allstate owned it between September 1983 and February 3, 1984, when it was sold. Although the affidavit refers to "finance papers" without attaching them as required by Rule 191, such a failure should not be considered fatal because nothing in the affidavit was contradicted by plaintiff. (See *Lindahl v. City of Des Plaines* (1991), 210 Ill. App. 3d 281, 299, 568 N.E.2d 1306 (stating courts must accept affidavit as true if uncontradicted by counteraffidavit or other evidentiary materials).) Furthermore, because it is apparent from the affidavit that the matters attested to were from the affiant's personal knowledge, the simple failure to state that expressly does not render the affidavit ineffective. (*Mount Prospect State Bank v. Forestry Recycling Sawmill* (1980), 93 Ill. App. 3d 448, 459-60, 417 N.E.2d 621.) Accordingly, we affirm the circuit court's finding that Allstate was merely a financial lessor.

Plaintiff also asserts that the circuit court erred when it granted summary judgment to Brookdale because it was a financial lessor. She maintains that Brookdale's affidavit was insufficient under Rule 191 because it states that it was made upon "information and belief" rather than the affiant's personal knowledge. Although it is true that such a statement renders an affidavit insufficient to sustain a summary judgment (*Jaffe v. Fogelson* (1985), 137 Ill. App. 3d 961, 964, 485 N.E.2d 531), sufficient evidence does exist elsewhere in the record to support the granting of summary judgment to Brookdale. (*Komater v.*

*Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 637, 502 N.E.2d 1295 (stating that it is appropriate to treat interrogatories as affidavits in support of summary judgment).) In its answers to plaintiff's interrogatories, Brookdale states that the truck was purchased from Dahlke on August 1, 1985, for $16,750 and immediately leased to Lindelof for a three-year period, during which Lindelof had custody and control of the truck. Dahlke's answers to plaintiff's interrogatories state that it sold the truck to Lindelof on July 31, 1985, for $16,750. Therefore, because the evidence in the record supports the conclusion that Brookdale was merely a financial lessor, we hold that summary judgment was appropriate.

## IV

Plaintiff next contends that the circuit court erroneously dismissed the strict liability count against Holmes, Dahlke, and Lenertz on the basis that each sale of the truck was an "isolated sale." She maintains that because she alleged that any of the intermediate owners may have created the defect by causing damage to the rear end protective device, it was inappropriate to dismiss the count against them.

■ We reject plaintiff's argument on this issue because by allowing her to plead a strict liability count when under *Mieher* she cannot plead negligence, she avoids the impact of that precedent. If, as *Mieher* held, the risks to a person colliding with a vehicle are unforeseeable as a matter of law, then no cause of action should exist under either negligence or strict liability. Although the court in *Mieher* did not address this issue, because it agreed with the appellate court that the plaintiff had failed to sufficiently allege such a cause of action, we believe that the court would have reached the same conclusion for strict liability claims as it did with negligence claims. Accordingly, we affirm the circuit court's dismissal of the strict liability count against Lenertz, Holmes, and Dahlke.

## V

■ Plaintiff last contends that the court erred in dismissing the strict liability count against Dahlke pursuant to section 2—621 of the Code of Civil Procedure. She asserts that because she alleged that Dahlke created the defect, he cannot be dismissed by simply certifying the name of the manufacturer without first denying creating the defect. We need not reach the merits of this contention, however, because of our holding above that the rationale of *Mieher* precludes a cause of action for strict product liability against Dahlke.

384

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO and McCORMICK, JJ., concur.