714 So.2d 244 (1998)
Gena Marie DETILLIER
v.
Cecil M. SULLIVAN, et al.
Nos. 96-CA-274, 96-CA-220.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
Rehearing Denied July 17, 1998.
*245 Paul H. Due, Kirk A. Guidry, Baton Rouge, and Lloyd J. LeBlanc, Jr., LaPlace, Bernard L. Charbonnet, Jr., New Orleans, for plaintiff-appellant.
Stephen N. Elliott, Howard B. Kaplan, Bernard, Cassisa, Elliott and Davis, Metairie, for defendant-appellee Lufkin Industries, Inc.
John C. Combe, Jr., Roderick K. West, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for plaintiff-appellee Travelers Insurance Company.
Before GAUDIN, DUFRESNE and GOTHARD, JJ.
GAUDIN, Judge.
This is an appeal by two parties, Lufkin Industries, Inc. and Gena Marie Detillier, from different segments of a September 14, 1995 judgment of the 40 th Judicial District Court.
This case was tried before a 12-person jury. Lufkin was found 51 per cent responsible for serious injuries sustained by Ms. Detillier in a highway accident on Interstate 10. She was a right front seat guest passenger in a 1985 Nissan Maxima automobile driven by Steven Small which ran into the rear end of a 1987 Model 1 18-wheel truck trailer manufactured by Lufkin.
Ms. Detillier alleged and proved to the jury's satisfaction that the protection device and/or the bumper on the rear of the trailer *246 was defective and that her injuries were enhanced because of this flaw.
Both the 18-wheeler, driven by Cecil Sullivan, and Small's auto were being driven in a westerly direction on I-10. Small was found 49 per cent negligent.
This case was tried before a St. John the Baptist jury from April 24 through May 5, 1995. Verdict was rendered on May 5th which awarded Ms. Detillier the sum of $1,879,498.00.
Several post-trial motions were heard on June 16, 1995; and on August 29, 1995, the trial judge (1) denied Lufkin's Exception of Prescription, (2) denied Ms. Detillier's motion to dismiss an intervention filed by Travelers Insurance Company, (3) set legal interest to run against Lufkin from July 7, 1992, the date it was named a defendant, and (4) ordered Lufkin to pay 51 per cent of $31,592.40 costs.
The contents of the August 29, 1995 decree were incorporated into the judgment on the jury verdict which was signed by the trial judge on September 14, 1995. From this judgment, Lufkin assigned these errors:
(1) Ms. Detillier's cause of action against Lufkin Industries, Inc. had prescribed,
(2) her cause of action against Lufkin is preempted by federal law and is in violation of interstate commerce,
(3) the crashworthiness doctrine may not be extended to vehicles which are not in use by a plaintiff,
(4) Ms. Detillier did not carry her burden of proof to establish that the bumper was defective or that her injuries were enhanced by the trailer bumper,
(5) the trial court erred in only apportioning 49 per cent fault to Small, and
(6) the trial court erred on the Jury Interrogatory form by requiring a finding of defect simply because an alternative design existed.
Ms. Detillier has appealed (1) the denial of the motion to dismiss Travelers and (2) the granting of legal interest from July 7, 1992 instead of from April 28, 1989, the date of judicial demand on Small's insurance carrier, Louisiana Farm Bureau Casualty Insurance Company.
For the following reasons, we affirm all parts of the September 14, 1995 judgment except those parts denying Ms. Detillier's motion to dismiss Travelers and the running of legal interest against Lufkin from July 7, 1992 instead of from April 28, 1989.

PROCEDURAL HISTORY
According to trial testimony, Small had a date with Ms. Detillier on April 30, 1988. They went from her home in Gramercy, Louisiana to New Orleans. Returning to Gramercy at approximately 3 a.m., Small was driving at least 65 miles per hour when he drove into the rear of the 18-wheeler, which had been proceeding in the same westerly direction at 55 miles per hour.
Ms. Detillier filed suit on November 16, 1988 against Sullivan; Pat Salmon & Sons, Inc., which owned the truck trailer; and Trisal Leasing Company, the vehicle's lessee. Small was not then a named defendant but he was later named a third party defendant by Lufkin.
On April 28, 1989, a supplemental and amending petition named Travelers, the uninsured-underinsured motorist carrier for Ms. Detillier, and Louisiana Farm Bureau, Small's liability insurer, as party defendants. Farm Bureau tendered its policy limits of $10,853.27 on August 8, 1989 and was dismissed as a defendant on the second day of trial, April 25, 1995.
Lufkin was named a defendant in a second supplemental and amending petition filed on July 8, 1992.
Ms. Detillier suffered severe head, facial, foot and ankle injuries and has undergone approximately 20 surgeries including numerous crania-facial reconstructive procedures. She lost one eye and her sense of smell. The jury award included $464,498.27 for past medical expenses and $50,000.00 for anticipated future medical expenses. Her overall monetary recovery was reduced by two per cent by the jury because she had not been wearing a safety belt.
*247 We shall first consider Lufkin's six assignments of error, then Ms. Detillier's assignments.

ASSIGNMENT NO. 1
In this assignment of error, Lufkin contends that Ms. Detillier's claims against it had prescribed because it (Lufkin) was not solidarily bound with Small or Farm Bureau; consequently, the pleading naming Lufkin, filed July 8, 1992, came too late.
In Louisiana, a suit against one solitary obligor interrupts prescription as to other solitary obligors. See Younger v. Marshall Industries, Inc., 618 So.2d 866 (La. 1993), and cases cited therein.
In denying Lufkin's Exception of Prescription, the trial judge found that Lufkin and Farm Bureau were solitary obligors, stating:
"At the conclusion of the trial on the merits, Lufkin Industries filed an Exception of Prescription. They argued that neither Lufkin Industries nor Steven Small, the only two parties held responsible, were sued within the prescriptive period. Louisiana Civil Code article 3463 states that `an interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive period continues as long as the suit is pending'. When Lufkin Industries was named as a defendant in the above numbered suit, Farm Bureau, the insurer of Steven Small, was a named defendant. Both Lufkin Industries and Steven Small were found liable for Gena Detillier's damages and are therefore solidarily liable. Farm Bureau is solidarily liable, based upon its contractual obligation with its insured, Steven Small. Farm Bureau and Lufkin Industries are, likewise, solidarily obligated.
"Although Farm Bureau had tendered its policy limits as early as August 8, 1989, they were not released from this case by final judgment of the court. It was not until the first day of trial, that Farm Bureau was dismissed. For these reasons, the Exception of Prescription is denied."
Farm Bureau, Small's liability insurance company, was sued on April 28, 1989, which was within one year of the accident. LSA-R.S. 22:655 gives an injured party the right to proceed directly against the tortfeasor's insurer without naming the tortfeasor. Lufkin's argument that it was not solidarily liable along with Small-Farm Bureau runs contrary to the jury verdict and Louisiana's comparative negligence statutes.
Further, there is no requirement in this state, for purposes of solidarity, that a plaintiff's injuries be the result of only one precise occurrence or that each defendant be responsible for 100 per cent of the damages. Here, it seems clear from the verdict that the jurors found that Ms. Detillier's initial injuries were caused by Small's negligence and that her injuries were enhanced by the defective rear protective device on the trailer.
The naming of Farm Bureau as a party defendant interrupted prescription as far as Lufkin is concerned.

ASSIGNMENT NO. 2
Lufkin contends in this assignment of error that federal law preempts Ms. Detillier's cause of action. The only specific state or federal guideline in effect at the time of the sued-on accident was the federal regulation requiring bumpers or devices serving similar purposes to be no more than 30 inches from the ground. This requirement had been in place since 1953. While Louisiana had not passed a statute mandating a lower bumper, Lufkin argues, the jury's imposition of such a requirement nonetheless impliedly preempted plaintiff's claims. Lufkin cites Freightliner Corp. v. Myrick, 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), which states that implied preemption can exist:
(1) if the scope of the federal statute indicates congressional intent to occupy the field exclusively,
(2) if compliance with both federal and state requirements is impossible, or
(3) if state law is an obstacle to the purposes and objectives of Congress.
Freightliner dealt with preemption under 15 U.S.C. § 1392, the preemption section *248 within the Federal Motor Vehicle Safety Act. The 30-inch bumper requirement was part of the Federal Motor Carrier Safety Regulations, enacted under the Federal Motor Carrier Safety Act. The trial judge dismissed Lufkin's preemption contention saying:
"The language relating to preemption, relied on by Lufkin, applies to a standard promulgated under the Federal Motor Vehicle Safety Act. As shown by plaintiff, the regulation governing trailer heights falls under the Federal Motor Carrier Safety Regulations. The two may have similar provisions and intent, but they are not the same. The FMVSA contains specific language as to when preemption applies. The FMCSR does not. To the contrary, the latter was not intended to preclude states or subdivisions thereof from establishing or enforcing state or local laws relating to safety, as long as it does not prevent full compliance with the federal regulations. Therefore, preemption will not apply when compliance with both federal and local regulations is possible."
The standard proposed by Ms. Detillier's two expert witnesses is a rear bumper no more than 22 inches from the ground. This is not, however, in direct conflict with the federal "no more than 30 inches" directive.
The Lufkin bumper in this case was 27¼ inches from the ground. The jury found that while this may not have been in conflict with the federal 30-inch measure, it was negligence nonetheless considering strong trial testimony that showed the 1953 guideline was far outdated in 1988 and that Lufkin was aware of the changes and circumstances calling for a lower bumper in the interest of highway safety. A photograph in evidence shows a trailer with the type bumper Small hit. A copy is attached to this opinion.
In any event, the federal "no more than 30 inches" regulation could not block Ms. Detillier from suing in the 40th Judicial District Court.

ASSIGNMENT NO. 3
Here, Lufkin submits that it has no duty or obligation to design a trailer's rear end so that it is safe for others to crash into and that the so-called crashworthiness doctrine applies only to vehicles being used by the person injured.
The federal "no more than 30 inches" rule was a definite attempt to protect, as much as possible, the motorist who runs into the rear of a 18-wheeler. The prevention and lessening of injuries from underride accidents has been the subject of numerous tests, studies and recommendations described by expert witnesses in this case, including Lufkin's experts.
This assignment of error has no merit. The primary issue here is not whether Lufkin had a duty to design a reasonably safe rear protection device but whether the bumper in place on the trailer was legally defective and, if so, to what extent did it contribute to Ms. Detillier's injuries.

ASSIGNMENT NO. 4
Lufkin contends that Ms. Detillier did not satisfactorily prove that the bumper was defective or that her injuries were enhanced by the trailer bumper. A product may be unreasonably dangerous if there was an alternate, feasible way to design or maintain the product with less harmful consequences even though the product does not appear to be dangerous per se. See Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986). According to Halphen, a plaintiff's burden in a products liability case was to prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous and that the condition existed at time of manufacture.
The jury heard, and no doubt was favorably impressed by, the testimony of Byron Bloch, an expert on automobile safety design and vehicle crashworthiness, and Ms. Detillier's other expert, Dr. Robert Ehrlich.
Bloch said that the Lufkin bumper, which had two vertical struts and no main diagonal reinforcement, was defective in design and unreasonably dangerous when manufactured by Lufkin. Upright automobiles in the 1950s, he said, "gave way" in the 1960s and 1970s to cars with lower frontal structures.
The Lufkin bumper, Bloch states, "... could not prevent the extreme underride hazard *249 and the penetration into Gena Detillier's survival space."
Dr. Ehrlich, a West Point graduate with advanced degrees from Purdue and Michigan universities and a fellow in the Society of Automotive Engineers, was qualified as an expert in mechanical and automotive engineering, body kinematics, accident reconstruction and human engineering. He has been with Stevens Institute of Technology for 25 years and he helped develop the lunar rover vehicle. He said that the front end of the car Ms. Detillier was in went under the bumper and far underneath the trailer. "This caused," Dr. Ehrlich said, "the rear of the trailer to intrude back almost to what is called the B-post ... the second post back which divides that front and rear doors or after the single door of a two-door car."
Because of this deep intrusion by the trailer, both Bloch and Dr. Ehrlich said the fact that Ms. Detillier was not wearing a seat belt made no difference as far as her injuries were concerned. Lufkin's experts, particularly Dan William Wall, did not agree with this. Wall, an expert in mechanical engineering employed by Cromack Engineering Associates, said that if Ms. Detillier had been wearing a seat belt, her injuries would have been less severe. She did not strike, as Dr. Ehrlich said, her head on the rear of the trailer where the two tail lights are. Wall said Ms. Detillier's head struck the windshield.
The testimony of the medical doctors, however, suggested that Ms. Detillier's face was struck by an object such as the rear of a trailer and that her injuries were not those of an unbelted passenger hitting the windshield.
Lufkin's other expert, LaVan Watts, is chief engineer of Lufkin's trailer division. His testimony pretty much agreed with Wall's although he did admit that in September of 1980 Lufkin received information from Dynamic Science saying that the under-ride guard should be no more than 20 inches from impact speeds at 30-40 miles per hour and 22 inches for speeds below 30 miles per hour. Lufkin, he said, does have one design where the guard is 19 inches above ground. The trailer Small hit had a higher bumper.
The closing speedi.e., the difference in speed between that of the 18-wheeler and Small's Nissanwas 10 to 15 miles per hour according to Bloch and Dr. Ehrlich but greater according to Wall, who estimated that Small was driving from 80 to 85 miles per hour.
Both Bloch and Dr. Ehrlich said that the 1953 "no more than 30 inches" guideline was obsolete long before Lufkin manufactured the trailer involved in this accident and that many national tests, surveys and recommendations pointing this out should have been well known by everyone in the trailer manufacturing industry, including Lufkin. Bloch testified that national tests and demonstrations as early as 1969 and 1970 showed that a rear-end clearance as high as 24 inches exposes a significant proportion of the vehicle population to serious underride accidents. He said that on March 3, 1969, a proposed rule suggested that rear bumpers on trailers should be no more than 18 inches from the ground.
All four experts, two for each side, testified at length under direct and cross examination. In essence, this is a case of the jury putting more belief in the opinions of Ms. Detillier's experts. We cannot say that the jury's evaluations of credibility and references of fact are manifestly erroneous. There are definitely two permissible views of the testimony and evidence here; consequently, the jury's choice can't be clearly wrong.

ASSIGNMENT NO. 5
The jury apportioned 49 per cent fault to Small. Lufkin contends this percentage should have been larger. Apportionment of fault, like findings and conclusions of fact, are not set aside absent manifest error.
Allotment of fault percentages in contributory negligence cases can't be determined by reference to an exact formula. A judge or jury must have considerable discretion. Only when this discretion is abused is the apportionment changed on appeal. While we agree with Lufkin to an extent and believe that Small's 49 per cent was low, we cannot say that this allotment was clearly wrong and beyond the jury's discretion.

*250 ASSIGNMENT NO. 6
Lufkin's final assignment of error concerns the jury interrogatory form, particularly interrogatories 1,2 and 3, which read:
(1) With respect to plaintiff's strict product liability claim against Lufkin Industries, Inc. was the Lufkin trailer unreasonably dangerous because of its design because alternative products were available to serve the same needs or desires with less risk of harm?
(2) With respect to plaintiff's strict product liability claim against Lufkin Industries, was the Lufkin trailer unreasonably dangerous because of its design because there was a feasible way to design the product with less harmful consequences?
(3) Was such defect in design a cause, as cause has been defined for you by the Court, of any injuries or damages sustained by Gena Detillier?
The wording in these interrogatories came from Halphen v. Johns-Manville Sales Corp., supra. We see no error.

DETILLIER'S ASSIGNMENTS OF ERROR
In her appeal, Ms. Detillier argues (1) that Travelers was wrongly granted recovery on its intervention claim and (2) that interest against Lufkin should commence on April 28, 1989, not July 7, 1992.
Travelers' subrogation claim was upheld by the trial judge because of language in the agreement whereby Ms. Detillier agreed:
"... to hold any monies received by her as a result of settlement and/or judgment in a subject lawsuit, or any other lawsuit arising as a result of the subject accident, in trust, for the Travelers Insurance Company to be paid to the Travelers Insurance Company immediately upon the same coming into her hands, provided, however, that any sum received in excess of Three Hundred Thousand Dollars ($300,000.00) shall be retained by her individually."
This runs afoul, Ms. Detillier believes, with the concept of partial subrogation and the Louisiana Supreme Court's holding in Egros v. Pempton, 606 So.2d 780 (La.1992), wherein the Court stated at page 784:
"If the UM insurer pays only part of the obligation, such as when it pays to its policy limits which are less than the total amount of damages, it is partially subrogated to the insured's rights ... If partial subrogation occurs, the insured is paid in preference to the UM insurer's right to reimbursement through subrogation, to ensure full recovery for the accident victim."
Actual wording of the subrogation agreement apparently was not an issue and was not discussed in Egros. We assume, however, that the language in that agreement, as likely in most if not all subrogation agreements, closely resembled the wording of the agreement signed by Ms. Detillier.
We believe that the Egros holding is controlling. The payment of $300,000.00 to Travelers would deny Ms. Detillier "full recovery" for the grave and lasting injuries she sustained. That section of the September 14, 1995 judgment in Travelers' favor is set aside.
Although the factual situation in Egros differs from those present here, the Supreme Court's definition of partial suborgation and when it applies is quite clear.
Regarding interest, Lufkin's position is that interest should run from July 8, 1992, the date of the supplemental and amending petition adding Lufkin as a defendant because there was no evidence demonstrating that Small was insured by Farm Bureau and because Lufkin and Farm Bureau are not solidarily bound. These contentions are not accurate.
Farm Bureau filed a motion to deposit funds into the registry of the court because of its admitted insurance coverage. Also, counsel for Farm Bureau confirmed, in open court, Farm Bureau's coverage.
Lufkin was found solidarily liable along with Small/Farm Bureau; accordingly, interest should run from April 28, 1989, the date Farm Bureau as Small's insurer, was sued.
AFFIRMED IN PART, REVERSED IN PART.
*251 DUFRESNE, J., concurs.

DUFRESNE, Judge, concurring.
I respectfully concur.
Although, I do not find manifest error in the jury's allocation of fault on behalf of Steven Small. I do believe that 49% is low.