# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-2989

SHMUEL RENNERT, Individually and as Personal
Representative of the Estate of DEVORAH R. RENNERT,

*Plaintiff-Appellant*,

*v.*

GREAT DANE LIMITED PARTNERSHIP,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 0390—**Virginia M. Kendall**, *Judge.*

_____

ARGUED FEBRUARY 25, 2008—DECIDED SEPTEMBER 11, 2008

_____

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* On July 1, 2005, Rabbi Shmuel
Rennert and his wife Devorah were driving on Skokie
Valley Road behind a large truck towing a trailer designed
by Great Dane. Unfortunately, the Rennerts' minivan
collided with the trailer; the underride guard on the
back of the trailer failed; and the minivan slipped under

the trailer. Shmuel Rennert was injured, but Devorah, who had been sitting in the passenger seat, was killed.

Rennert brought a single-count action in state court against Great Dane, alleging that Great Dane was liable to him under Illinois's strict products liability regime. Great Dane removed to federal court under diversity jurisdiction. Once in federal court, Great Dane moved to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim. The district court dismissed the claim with prejudice; we generally agree with its analysis and affirm. We decline the invitation to certify this case to the Supreme Court of Illinois for resolution, because it does not satisfy our criteria for certification.

# I

Rennert based his claim on the following allegations: the trailer's underride guard was in an unreasonably dangerous condition because it was badly designed (too weak and too high above the road); a better design was feasible; the risks of this design outweigh its benefits; and, most importantly for this case, the risk of an impact of this nature was reasonably foreseeable. All of the parties agree that Illinois law governs, and so the question before us is whether the Supreme Court of Illinois would recognize a cause of action based on these allegations. See *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997). Where the state supreme court has not ruled definitively, we must take our guidance from the appellate courts unless there are persuasive indications that the state

supreme court might rule otherwise. See *Liberty Mut. Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003).

It is Rennert's bad luck that Illinois is not among the states—by at least one count, nine—that have recognized a cause of action in a case such as this. See *Beattie v. Lindelof*, 633 N.E.2d 1227 (Ill. App. Ct. 1994); *Mieher v. Brown*, 301 N.E.2d 307 (Ill. 1973), but *cf. Harris v. Great Dane Trailers, Inc.*, 234 F.3d 398 (8th Cir. 2000) (Arkansas law); *Buzzard v. Roadrunner Trucking, Inc.*, 966 F.2d 777 (3d Cir. 1992) (Pennsylvania law); *Rivers v. Great Dane Trailers, Inc.*, 816 F. Supp. 1525 (M.D. Ala. 1993); *Worldwide Equipment, Inc., v. Mullins*, 11 S.W.3d 50 (Ky. Ct. App. 1999); *Detillier v. Sullivan*, 714 So.2d 244 (La. Ct. App. 1998); *Quay v. Crawford*, 788 So.2d 76 (Miss. Ct. App. 2001); *Garcia v. Rivera*, 553 N.Y.S.2d 378 (N.Y. App. Div. 1990); *Hagan v. Gemstate Mfg., Inc.*, 982 P.2d 1108 (Or. 1999); *Great Dane Trailers, Inc. v. Wells*, 52 S.W.3d 77 (Tex. 2001).

Although in *Mieher* the Supreme Court of Illinois was considering a negligence claim, rather than one based on strict liability, the court in the end "d[id] not consider that the alleged defective design created an unreasonable danger or an unreasonable risk of injury." 301 N.E.2d at 310. The court drew a bright line based on RESTATEMENT (SECOND) OF TORTS § 435(2): a manufacturer has a duty to design a vehicle that is reasonably safe for the occupants, but it owes no duty to those who collide with that vehicle. Even if accidents are foreseeable, the court reasoned, the manufacturer is obliged to secure the occupants of only its vehicle from that foreseeable harm: the manufacturer does not owe a duty to protect those who

collide with its vehicle. See *Mieher*, 301 N.E.2d at 308-10; but see *id.* at 310-11 (Goldenhersh, J. dissenting) (arguing that the duty of care should extend to prevent unreasonable risk to occupants, other drivers, and pedestrians).

Twenty-one years later, the Illinois Appellate Court decided *Beattie v. Lindelof*, 633 N.E.2d 1227 (Ill. App. Ct. 1994). Like *Mieher* and this case, *Beattie* involved an underride accident; like this case and unlike *Mieher*, *Beattie* was brought in strict liability; unlike both *Mieher* and this case, *Beattie* was brought against a former owner for failure to maintain, rather than a manufacturer. Nevertheless, the court found that the allegation in *Beattie* "[wa]s effectively the same as the plaintiff's allegation in *Mieher*," *id.* at 1233, and dismissed it. Importantly, the *Beattie* court extended the reasoning of *Mieher* to cover a strict liability claim and predicted that the state supreme court would agree with it. *Id.* at 1235 ("Although the court in *Mieher* did not address [the strict liability] issue . . . we believe that the court would have reached the same conclusion for strict liability claims as it did with negligence claims."). (For what it is worth, the Supreme Court of Illinois indeed denied leave to appeal. 642 N.E.2d 1273 (Ill. 1994).) In sum, we have a fairly clear articulation of law from the state supreme court, and the state appellate court has extended this ruling to cover facts materially identical to those now before us.

Rennert seems at times to be urging us to rule in his favor simply because, in his view, the *Mieher* dissent and the nine states that do recognize this cause of action are

correct. Whether or not they are, however, is beside the point. We cannot overturn or disagree with a state court's authoritative rulings when we sit in diversity. Quite to the contrary, we are bound by them: "we apply the law of Illinois as we believe the Illinois Supreme Court would apply it." *Liberty Mutual*, 352 F.3d at 1100. Given the consistent position Illinois has taken, we would need strong evidence that the Supreme Court of Illinois is on the brink of changing its position before we could do likewise. The evidence instead supports a finding of continuity. *Beattie* extended *Mieher*'s analysis to a case just like Rennert's, and the state supreme court has been silent since.

Acknowledging this problem, Rennert has also tried to argue that the Supreme Court of Illinois would indeed overturn *Mieher* if it had the chance. We are not persuaded. He criticizes *Mieher*'s analysis (or lack thereof) of the duties involved, arguing that they do not meet the standards set by other state precedents. But (even if this were relevant), he overlooks the reason for the limitations in the opinion: the *Mieher* court never reached the question of duty because it ruled as a matter of law that there was no unreasonable risk. *Mieher*, 301 N.E.2d at 310. With no unreasonable risk, there would be no reason to determine to whom a duty would be owed. This perceived failure therefore provides no reason for the state supreme court to revisit *Mieher*. Rennert also points out that *Mieher* was discussing only the negligence theory, and not strict liability, but *Beattie* extended *Mieher*'s reasoning to strict liability and the supreme court passed up the opportunity to revisit the issue by denying leave to appeal.

Rennert also argues that the Supreme Court of Illinois might abandon *Mieher* if it rethinks its approach to RE-STATEMENT (SECOND) OF TORTS § 402A. (The state's products liability law traditionally drew heavily from that Restatement, but the Supreme Court of Illinois has now begun to refer to the RESTATEMENT OF THE LAW THIRD, TORTS: PRODUCTS LIABILITY (1998). See *Blue v. Environmental Eng'g, Inc.,* 828 N.E.2d 1128, 1139-40 (Ill. 2005). Rennert has not relied on this shift to support his position.) See *Suvada v. White Motor Co.,* 210 N.E.2d 182, 187 (Ill. 1965) (overruled on other grounds). A district court in Florida faced with a claim under § 402A sent a case similar to Rennert's to a jury. See *Rivers v. Great Dane Trailers, Inc.,* 816 F. Supp. 1525 (M.D. Fla. 1993). *Mieher*, however, relied on RESTATEMENT (SECOND) § 435(2), not on § 402A. Be that as it may, this argument merely offers one more reason why the Illinois Supreme Court *might* abandon *Mieher*; it does not prove to us that it *will* do so or that it is very likely to do so, which is what needs to be shown before we can disregard a state's governing precedent.

The change that would have been most likely to prompt a corresponding adjustment in Illinois's policy about truck regulations and underride liability was the promulgation of regulations for rear guards by the National Highway Traffic Safety Administration in 1996, see 49 C.F.R. §§ 390.1, 390.5, and 393.86 (1996), and later extended to all commercial motor vehicles, see 64 Fed. Reg. 47,703 (Sept. 1, 1999). This rulemaking postdates both *Mieher* and *Beattie*. The commentary accompanying these regulations, however, counsels against judicial interference: the regulations explicitly discuss the complicated

tradeoff between excessively firm and excessively yielding rear guards, and they acknowledge that there is no perfect solution given the vast number of variables involved in any given accident. See 61 Fed. Reg. 2004, 2004 (1996). We must assume that the Illinois General Assembly has long been aware of *Mieher*, *Beattie*, the federal rulemaking, the state's arguable outlier status on this legal issue, and the dangers posed by tractor-trailers. Nevertheless, the General Assembly has not acted either to overrule *Mieher* legislatively or even to suggest a different balancing of the relevant policy considerations. Accepting Rennert's invitation to shape Illinois policy on this matter would transgress limitations imposed both by federalism and the separation of powers.

## II

We express no opinion on the wisdom of Illinois's choice. It is enough to say that the choice is Illinois's to make, and it is our responsibility to respect it. That leads to Rennert's final argument: recognizing our limited authority (and stuck in federal court because of the defendant's exercise of its right to remove, not because he consciously chose to stay out of state court), Rennert asks that we certify this question to the Supreme Court of Illinois. 7TH CIR. R. 52; ILL. S. CT. R. 20. "Certification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the

issue." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). Certification of a question to a state supreme court is not proper where the state supreme court and state appellate courts have spoken to the issue, and are not in conflict. See *Liberty Mutual*, 352 F.3d at 1100. The Supreme Court of Illinois may accept certifications from the United States Supreme Court and the Seventh Circuit on questions "which may be determinative of the said cause, and there are no controlling precedents in the decisions of this court . . . ." ILL. S. CT. R. 20.

The latter two standards decide the case at hand: the supreme court spoke in *Mieher*, and the appellate court in *Beattie* not only did not contradict the ruling but extended it. The Supreme Court of Illinois had "an opportunity to illuminate a clear path on the issue," *Pate*, 275 F.3d at 272, but it declined to do so. There is no indication that there is any confusion in the state on the matter. The state supreme court has been silent on this issue since *Mieher*, but "that may be because Illinois appellate courts have spoken, and they are not in conflict [with the state supreme court]." *Liberty Mutual*, 352 F.3d at 1100. Standing alone, the fact that a number of Illinois's sister states have chosen a different rule is not enough to require certification.

The judgment of the district court is AFFIRMED.