SODERLUND BROTHERS, INC., Plaintiff-Appellant, v. CARRIER CORPORATION, Defendant-Appellee (The City of Chicago, Defendant).

First District (5th Division)   No. 1—92—4018

Opinion filed November 17, 1995.—Rehearing denied April 3, 1996.

William J. Harte, Ltd., of Chicago (William J. Harte and Joan M. Mannix, of counsel), for appellant.

Larry Selander and Weston W. Hanscom, both of Keck, Mahin & Cate, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Soderlund Brothers, Inc. (Soderlund), appeals from an order granting summary judgment to defendant, Carrier Corporation (Carrier), and from a subsequent order denying plaintiff's motion to reconsider. The counts in plaintiffs' amended complaint for declaratory judgment and other relief that were brought against Carrier[1] presented claims for defamation (count II), tortious interference with prospective economic advantage (count III) and commercial disparagement (count IV). The count that is the subject of the instant appeal is count III.[2]

Soderlund and Carrier competitively bid on a five-year contract with the City of Chicago (the City) to maintain the air conditioning equipment at O'Hare Airport. That equipment included four 2,000-ton Carrier air conditioners; one 137.5-ton Carrier air conditioner; and one 4,000-ton Carrier air conditioner. As part of the bid process, bidders were required to provide proof of at least five years' experi-

[1]Count I of plaintiff's complaint, which sought declaratory judgment against defendant City of Chicago was dismissed with prejudice on the ground of mootness by previous order. That order is not the subject of the instant appeal.

[2]Soderlund has not presented any argument on appeal with respect to its claims for defamation and commercial disparagement which also were dismissed under the order granting summary judgment. This failure to present argument operates as a waiver of any errors regarding the dismissal of those claims. See *Bank of Illinois v. Thweatt* (1994), 258 Ill. App. 3d 349, 630 N.E.2d 121; *In re Marriage of Winton* (1991), 216 Ill. App. 3d 1084, 576 N.E.2d 856; 134 Ill. 2d R. 341(e)(7) (points not argued are waived).

ence with maintenance, repair and service of air conditioning machines and equipment of similar type and design to those that were the subject of the contract; resumes of three personnel having a minimum of six years' experience, who would be selected to perform the contract work, including a full description of their work experience and references; names and addresses of qualified service engineering personnel in the bidder's direct employ who would be available to analyze complex unusual equipment problems; and proof of ability to stock spare parts within 30 days of the contract award. Special conditions of the contract prohibited substitution of personnel without prior consent by the commissioner of the Department of Aviation and prohibited subcontracting more than 25% of the work to be performed under the contract.

Soderlund alleged that it was low bidder on the contract and that the City thereafter sought verification of its qualifications. On November 23, 1983, William R. Spicer, acting purchasing agent for the City, requested information including the names, qualifications and experience of Soderlund's officers and key personnel; a list of jobs similar in magnitude that had been successfully performed in the past; and the percentage of work that Soderlund intended to perform under the contract. Soderlund responded on December 1, 1983, by identifying the names of three individuals who would perform the contract work; by providing the names of similar jobs it had performed; and by stating that it planned to perform 100% of the work under the contract. Soderlund's response did not include resumes of or references for the named personnel nor did it include names of individuals to contact regarding the similar jobs.

On December 13, 1983, Spicer wrote to Soderlund requesting further references or proof that Soderlund had experience in the maintenance and retubing of large air conditioning systems similar to those at O'Hare. Soderlund's letter dated January 2, 1984, listed several of its accounts (without references) and requested a meeting with City engineers to discuss the qualifications of Soderlund's mechanics. In that letter Soderlund also stated that it would subcontract the retubing component of the contract to "one of a number of reliable companies who specialize in this type of procedure."

By letter dated February 3, 1984, Spicer requested cost estimates used by Soderlund in preparing its proposal, particularly with respect to fixed costs of materials anticipated for tube replacement and for stock. Spicer concluded the letter by stating that "[a] decision regarding the acceptance of your proposal will be made following our receipt of the above requested information." On February 24, 1984,

Soderlund wrote to Spicer stating that it would not provide the cost breakdown requested because that information, if disclosed to the City, would be accessible to Soderlund's competitors and "could lead to the loss of future projects as a result of others knowing our bidding procedures." Soderlund also stated that "any parts required for this job will either be stocked on the job site or are readily available from the Carrier parts division in Syracuse, New York." Soderlund assured Spicer that the specified work would be performed according to standard industry practice and that Soderlund was more than qualified to carry out the terms of the agreement.

In a letter dated March 16, 1984 (the March 16 letter), Carrier's attorney, Larry Selander, wrote to Spicer concerning Soderlund's bid. It is this letter which is the subject of the instant litigation. In that letter, Selander indicated that Carrier personnel contacted several entities identified as references in Soderlund's January 2, 1984, letter and listed 14 discrepancies concerning information Soderlund provided with respect to those entities. Selander also made the following statements, referred to later in this opinion by number, which Soderlund argues were false and misleading:

(1) "[W]e note that Soderlund has been in existence for only five years." (Alluding to Soderlund's claim that it had been in existence for 35 years.)

(2) "[W]e are not aware of any resumes having been submitted to show the six years of experience on the part of Soderlund's personnel as required under the specifications."

(3) "[W]e question whether Soderlund has the experience required with large air conditioning systems similar to those at O'Hare."

(4) "Thus, Soderlund essentially admits a lack of experience in this area."

(5) "Our client [Carrier] informs us that *** the re-tubing portion of the contract constitutes 40 percent of the job overall, and we have been informed that Soderlund has refused to break down its bid to show the percentage attributed to re-tubing. Accordingly, Soderlund's bid does not meet the specifications on subcontracting."

(6) "We suggest that the latter alternative does not meet the specification requirements. In addition, we question whether Soderlund would be capable of covering the cost of these materials within 30 days of the award of contract."

(7) "It is Carrier's position that the above related information requires that Soderlund's bid be rejected."

In response to Carrier's March 16 letter, Soderlund wrote to the City on March 26, 1984, and on March 28, 1984, and included therein

a more detailed account of its prior work experience and explained the difficulties it encountered in obtaining that information. Soderlund also reiterated that it had been in existence for 35 years. On May 1, 1984, Soderlund wrote to Spicer summarizing the reasons Soderlund should be awarded the contract and seeking a final decision from the City. A final letter was sent by Soderlund to Spicer on August 22, 1984. On September 7, 1984, Spicer wrote to Soderlund advising that the City had not accepted its bid and that the bid which was accepted, although not the lowest bid, "represent[ed] the best bid based on cost, bidders' experience and risk." With respect to Soderlund's proposal, Spicer stated:

"[A]fter the many exchanges between you and this office, we were still not able to verify that your firm had the experience called for in the bidding document.

Our decision is based on the conditions set forth in the proposal and your ability to respond to them."

It is Soderlund's contention that Selander's letter of March 16, 1984, written on behalf of Carrier, included several false or misleading statements. According to Soderlund those statements, which are set forth above, were false or misleading because: Soderlund had been incorporated in 1969 and, thus, contrary to Carrier's assertion, was in existence for more than five years; Soderlund had submitted the required resumes; Soderlund's personnel had experience with air conditioning systems similar to those at O'Hare; Soderlund had experience regarding retubing of chillers and condensers; and Soderlund met the contract specifications including those for subcontracting.

In its motion for summary judgment, Carrier argued that there had been no material misrepresentation of fact in the March 16 letter; that Soderlund's bid did not meet contract specifications; that Carrier had "merely expressed its opinion" concerning Soderlund's bid; and that the City did not rely on any of Carrier's statements in making its decision. Carrier conceded that the statement in its March 16 letter that "Soderlund has been in existence for only five years" was "arguably inaccurate"[3] but contended that the statement was not material; that Soderlund had advised the City on two subsequent occasions, before the contract had been awarded, that it had been incorporated in 1969; and that Edward Gronkowski, the senior specification engineer for the City who was involved in the decision

---

[3]According to Carrier, Soderlund was involuntarily dissolved on December 1, 1980, and reinstated on February 4, 1981. Based on the 1981 reinstatement date, Soderlund had not been in existence for five years as of 1984.

to make the contract award, stated in his affidavit that the erroneous statement did not influence his recommendation or, to the best of his knowledge, the purchasing department's decision. Carrier moved for summary judgment arguing that it had a conditional privilege to compete and that, in accordance with that privilege, its March 16 communication, which was made in good faith and which did not contain any material misrepresentations, was protected.

Attached to Carrier's motion for summary judgment was Gronkowski's affidavit. In that affidavit, Gronkowski stated that he reviewed the bids for maintenance of the air conditioning equipment at O'Hare and recommended that the contract be awarded to Carrier. Gronkowski also stated: "My recommendation, and to the best of my knowledge, the Purchasing Department's decision [to award the contract to Carrier] was not influenced by Carrier's statement, in its March 16, 1984 letter, that it thought Soderlund had been in business for only five years." Attached to Gronkowski's affidavit was a copy of a memorandum dated April 13, 1984 (the April 13 memorandum), written by Gronkowski to his superior, William Spicer, in which he stated the reasons for his recommendation to reject Soderlund's bid. In that memorandum, Gronkowski noted that "none of [Soderlund's] references were able to ascertain Soderlund's experience on large centrifugal air conditioning systems or chiller and condenser tube replacement." Gronkowski also noted Soderlund's failure to supply estimations used in formulating its bid and Soderlund's contention that those figures were confidential and would put the firm at a competitive disadvantage. Gronkowski expressed "some doubt" as to whether Soderlund had apportioned a sufficient dollar amount for stock parts, long-term maintenance replacement parts, subcontracting of tube replacement, and inspections. Gronkowski also expressed doubt concerning Soderlund's specific experience with large centrifugal machines and its inability to name three experienced mechanics in its employ. The memorandum concluded as follows:

"Based on the information provided by Soderlund Bros. Inc., it is not my opinion that this firm meets the terms of the *Bidder Qualifications* section of this proposal. Through the exchanges of correspondence pertaining to this bid, they have not established themselves as having been responsible for the maintenance of a similar type system for a substantial length of time. Additionally, they have not shown themselves as having a full staff of mechanics with the required experience described in the specification.

*** From the data received from this firm and the information gathered from their references, it is my opinion that this firm was not qualified to submit a proposal for this contract."

At the time the trial court ruled on Carrier's motion for summary judgment, Soderlund had not filed a response to that motion. Soderlund's trial counsel had requested and was given several continuances over a six-month period in order to file a response and to take Gronkowski's deposition.[4] After Soderlund had taken that deposition, Soderlund requested and was granted a continuance so that a counteraffidavit could be obtained from Michael Sheahan, Soderlund's operations manager. At the next scheduled hearing date, Soderlund advised the court that a meeting had been set with Sheahan and requested a further continuance. The motion was denied, and the court granted summary judgment to Carrier.

Thereafter, Soderlund filed a motion for reconsideration and attached to it the affidavit of Michael Sheahan and the transcript of Gronkowski's deposition. Pursuant to the trial court's request, the parties briefed the issue of the admissibility of Sheahan's counteraffidavit since it was submitted after the court ruled on Carrier's summary judgment motion. Carrier argued against admissibility of the counteraffidavit, contending that the information therein had been available at the time of the summary judgment hearing; that Soderlund was dilatory in obtaining the counteraffidavit; and that the counteraffidavit did not raise a material issue of fact. The record on appeal does not contain a transcript of the hearing on the motion to reconsider, and it is not clear whether the trial court considered Sheahan's counteraffidavit or Gronkowski's deposition when it denied that motion.[5]

A motion for summary judgment may be granted when "the

---

[4]The information relative to Soderlund's requests for continuances is taken from the affidavit of one of Soderlund's attorneys which was attached to Soderlund's memorandum filed in support of Soderlund's motion for reconsideration. That affidavit stated that continuances were requested because of the engagement of plaintiff's counsel in prolonged litigation concerning the reapportionment of congressional districts in the State of Illinois and the redistricting of State legislative districts.

[5]Soderlund's appellate brief states that "it appears clear that the trial court refused to consider Sheahan's affidavit [as] Sheahan's affidavit demonstrates the existence of genuine issues of material fact which should have precluded the entry of summary judgment in Carrier's favor and which should have caused the trial court to reverse its earlier ruling upon reconsideration." The record filed in the instant appeal contains no transcript of the hearings at which Carrier's motion for summary judgment was argued and granted and at which Soderlund's motion for reconsideration was argued and denied. Thus, the rationale and bases for the trial court's rulings are not available.

pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992); *e.g.*, *Torres v. City of Chicago* (1994), 261 Ill. App. 3d 499, 632 N.E.2d 54.) In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions and affidavits in the light most favorable to the nonmoving party. (*E.g.*, *First State Insurance Co. v. Montgomery Ward & Co.* (1994), 267 Ill. App. 3d 851, 642 N.E.2d 715; *Stephen v. Swiatkowski* (1994), 263 Ill. App. 3d 694, 635 N.E.2d 997.) If fairminded persons could draw different inferences from the undisputed facts, summary judgment should not be granted. (See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 607 N.E.2d 1204; *Anglin v. Oros* (1994), 257 Ill. App. 3d 213, 628 N.E.2d 873.) Appellate review of an order granting summary judgment is *de novo*. (*E.g.*, *Hesselink v. R.L. Perlow Corp.* (1994), 265 Ill. App. 3d 473, 637 N.E.2d 575; *La Salle National Bank v. Skidmore, Owings & Merrill* (1994), 262 Ill. App. 3d 899, 635 N.E.2d 564; *Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 587 N.E.2d 494.) In reviewing that ruling, the appellate court must consider anew the facts and law related to the case and determine whether the trial court was correct; abuse of discretion is not the proper standard of review since the grant of summary judgment is not discretionary (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 586 N.E.2d 1211). *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 585 N.E.2d 1164.

■ At the time the trial court granted summary judgment to Carrier, the court considered the pleadings and exhibits, answers to interrogatories, and the affidavit of Gronkowski which was attached to Carrier's motion for summary judgment. While the facts in an affidavit not contradicted by counteraffidavit will be taken as true, despite contrary averments in the pleadings (see *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457), the movant must preclude any possible liability before the party opposing summary judgment is required to present some factual basis by way of counteraffidavit. (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 456 N.E.2d 958.) Stated another way, where the party opposing summary judgment fails to file counteraffidavits, the moving party should not be awarded summary judgment unless the affidavits filed in support of that motion establish the right to judgment as a matter of law. (*T.E.C. & Associates, Inc. v. Alberto-Culver Co.* (1985), 131 Ill. App. 3d 1085, 476 N.E.2d 1212; *Marquette National Bank v. Heritage Pullman Bank & Trust Co.* (1982), 109 Ill. App. 3d 532, 440 N.E.2d

1033.) However, if the summary judgment movant is the defendant who has raised an affirmative defense:

> "the materials need only establish the defendant's factual position on the affirmative defense raised. [Citation.] Once the movant has carried this burden, the respondent may not rely on the factual issues raised by the pleadings, but must submit affidavits or refer to depositions or admissions on file which present a contrary version of the facts. [Citation.] While parties opposing a summary judgment motion are not required to prove their case, they are under a duty to present a factual basis which would arguably entitle them to judgment in their favor, based on the applicable law. [Citations.]" *Winnetka Bank v. Mandas* (1990), 202 Ill. App. 3d 373, 387-88, 559 N.E.2d 961, 969-70 (Statute of Frauds defense).

See *Roy v. Coyne* (1994), 259 Ill. App. 3d 269, 630 N.E.2d 1024 (in tortious interference case, privilege not raised on face of complaint is affirmative defense for which the burden of pleading and proving rests with defendant).

■ Soderlund's complaint alleged as one of its theories of recovery the tort of intentional interference with prospective business advantage. The elements of that tort include: (1) plaintiff's reasonable expectation of entering a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful or intentional interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 568 N.E.2d 870; *Roy v. Coyne*, 259 Ill. App. 3d 269, 630 N.E.2d 1024.

■ Carrier raised as an affirmative defense and as a basis for summary judgment the privilege of competition. The privilege to engage in business and to compete allows one to divert business from one's competitors generally as well as from one's particular competitors provided one's intent is, at least in part, to further one's business and is not solely motivated by spite or ill will. (See *Candalaus Chicago, Inc. v. Evans Mill Supply Co.* (1977), 51 Ill. App. 3d 38, 366 N.E.2d 319; Restatement (Second) of Torts § 768(1)(d), Comment *b*, at 39-40 (1979).) That privilege extends to the tort of interference with a prospective business relation or economic advantage but does not apply to the tort of interference with a contractual relation. (See *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 610, 480 N.E.2d 1176, 1182 ("[u]nlike the right to receive the benefits of a contract, the right to engage in a business relationship is not absolute, and must be exercised with regard to the rights of others"); *Belden Corp. v. Inter-North, Inc.* (1980), 90 Ill. App. 3d 547, 551, 413 N.E.2d 98, 101 ("[t]he

sacrosanct contractual relation takes precedence over the conflicting rights of any presumptive interferor, including his right to compete and his own prospective advantage"); see generally Restatement (Second) of Torts § 768, Comment *a*, at 39 (1979).) Section 768 of the Restatement (Second) of Torts sets forth the elements for competition or permissible interference as follows:

"(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another *** does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other." (Restatement (Second) of Torts § 768, at 39 (1979).)

Acts of competition which are never privileged include fraud, deceit, intimidation, or deliberate disparagement. *Belden Corp. v. Inter-North, Inc.*, 90 Ill. App. 3d 547, 413 N.E.2d 98; see *Galinski v. Kessler*, 134 Ill. App. 3d 602, 480 N.E.2d 1176. See generally W. Prosser, Torts § 130, at 956 (4th ed. 1971).

On appeal, Soderlund argues that summary judgment was improper because a material question of fact existed as to the status of Soderlund's relationship with the City at the time of the March 16 letter[6] and that the extent of their relationship impacted on the extent of Carrier's privilege of competition. In support of this argument, Soderlund relies on conflicting statements made in Sheahan's affidavit and Gronkowski's deposition tendered to the court with its motion to reconsider. (Sheahan stated in his affidavit that he had been advised by Gronkowski on March 1, 1984, that bond forms relating to the contract were being sent to Soderlund and that once they were executed, Soderlund would be awarded the contract. In his de-

---

[6]Included in the affidavit of Michael Sheahan, attached to Soderlund's motion to reconsider, are allegations suggesting that a contract had been awarded to Soderlund based on certain oral statements made to Sheahan by Gronkowski. Notwithstanding the issue of whether this affidavit was or should have been considered by the trial court in ruling on Soderlund's motion to reconsider, which will be discussed later in this opinion, we note Soderlund never argued in the lower court, nor does it argue on appeal, that Carrier is liable for the tort of intentional interference with a contractual relation. In fact, in its reply brief, Soderlund expressly states that it had not asserted nor does it seek to assert such a theory of recovery.

position, Gronkowski stated that he did not recall any such conversation with Sheahan.) Soderlund argues that these conflicting statements raise a question of fact that is material to the issue of Carrier's privilege because, if Sheahan is to be believed, a contract between Soderlund and the City was imminent at the time of Carrier's March 16 letter such that Carrier's privilege to compete significantly decreased.

Before reaching the merits of Soderlund's argument, we must comment on the procedural question of whether Sheahan's affidavit and Gronkowski's deposition, first presented to the court after summary judgment had been granted, should have been considered by the trial court when it ruled on Soderlund's motion to reconsider. As noted above, it is not clear from the record whether these documents were in fact considered by the trial court. What is clear, however, is that the consideration of new evidence presented on a motion for reconsideration is a matter of discretion with the trial judge. (*E.g.*, *Hall v. DeFalco* (1988), 178 Ill. App. 3d 408, 533 N.E.2d 448; see *Napoli v. Hinsdale Hospital* (1991), 213 Ill. App. 3d 382, 572 N.E.2d 995.) Moreover, where the plaintiff has been given ample opportunity to prepare and present evidence affidavits and documents in opposition to defendant's motion, the court's refusal to allow the filing of additional affidavits does not constitute an abuse of discretion. (*Wells v. Great Atlantic & Pacific Tea Co.* (1988), 171 Ill. App. 3d 1012, 525 N.E.2d 1127.) Here, while the record could have supported the trial court's refusal to consider Sheahan's affidavit and Gronkowski's deposition, we need not reach any decision on that issue since we find that, even assuming their admissibility, Soderlund has not established a question of *material* fact.

Soderlund's contention that the privilege of competition decreases as the prospective business relationship nears that of a contractual relationship is not supported at law. Soderlund cites to *Belden Corp. v. InterNorth, Inc.* and the statement therein that "as the degree of enforceability of a business relationship decreases, the extent of permissible interference by an outsider increases." (*Belden*, 90 Ill. App. 3d at 552, 413 N.E.2d at 102.) In context, this statement does not support Soderlund's contention. In *Belden Corp.*, a preliminary injunction had been obtained based upon claims of intentional interference with contractual relations and intentional interference with prospective business relations. The plaintiff, Belden Corporation, and its intervening shareholders sought to enjoin defendant, InterNorth, from making a tender offer to acquire Crouse-Hinds, Inc. Belden alleged that it had entered into a merger agreement with Crouse-Hinds' management whereby the management agreed to pres-

ent and recommend to the Crouse-Hinds' shareholders a merger with Belden Corporation. Belden's shareholders intervened alleging interference with their prospective advantage to be realized upon consummation of the merger with Crouse-Hinds. Preparatory to making its ruling regarding the propriety of the issuance of the preliminary injunction, the court considered whether the plaintiff and the intervenors had satisfied the requirements of the intentional interference torts. In making that determination, the court differentiated between the two torts recognizing that the privilege of competition extended only to the tort of interference with prospective business relation, where there is a mere expectancy of future economic gain, as opposed to the tort of interference with contractual relation, where there is a certain and enforceable expectation of economic gain. As the court noted:

> "When a business relationship affords the parties no enforceable expectations, but only the hope of continued benefits, the parties must allow for the rights of others. They therefore have no cause of action against a bona fide competitor unless the circumstances indicate unfair competition, that is, an unprivileged interference with prospective advantage. In sum, as the degree of enforceability of a business relationship decreases, the extent of permissible interference by an outsider increases." (90 Ill. App. 3d at 552, 413 N.E.2d at 102.)

With respect to the claim for intentional interference with a business relation or advantage, the court found that Belden and the intervenors had:

> "a mere expectancy, and must therefore forbear other parties' pursuit of legitimate business goals. [Plaintiff's] prospective advantage is allotted no more protection from privileged activities than the prospective advantage of other parties. Accordingly, [plaintiff] cannot meet the requirements for interference with prospective advantage unless it makes a showing of unfair competition on the part of [defendant]." (90 Ill. App. 3d at 553, 413 N.E.2d at 102-03.)

Concluding that the evidence did not support a finding of unfair competition by the defendant, the court held that defendant's intentional interference with a prospective business relation could not be established and, thus, the preliminary injunction was improvidently granted.

■ Based upon our review of *Belden Corp.*, we conclude that the court in that case did not create a balancing test that inversely related the extent of the permissible interference with the increased degree of expectancy of a contract. Rather, that case continued to apply the established law that if the tort of interference with prospec-

tive business relation is alleged, the defendant can raise and is entitled to the protection of the privilege of competition provided, of course, the defendant has not employed a wrongful means and is not motivated solely by malice or ill-will. (See, *e.g.*, *Belden Corp. v. Inter-North Corp.*, 90 Ill. App. 3d 547, 413 N.E.2d 98; *Candalaus Chicago, Inc. v. Evans Mill Supply Co.*, 51 Ill. App. 3d 38, 366 N.E.2d 319; Restatement (Second) of Torts § 768 (1979).) While the expectancy to realize a contract may become more reasonable over the course of time and after significant dealings between the parties, that expectancy does not become a certainty, and thus is not entitled to any greater protection, until the contract is consummated. Thus, we reject Soderlund's contention that Carrier's privilege of competition would have been limited based upon Sheahan's affidavit statements that Soderlund's contract with the City was imminent at the time of Carrier's March 16 letter. Since Soderlund does not argue the existence of a contract but merely the expectancy of entering into a contract,[7] in accordance with case law and authorities, Carrier was entitled to raise competition as a privileged interference and that defense would defeat Soderlund's claim of intentional interference unless Soderlund could establish that the means of competition employed by Carrier were wrongful.

Soderlund does contend that Carrier employed unlawful means of competition based upon several false and misleading statements it made about Soderlund to the City in the March 16 letter. Soderlund also argues that summary judgment was improper because genuine issues of material fact existed as to whether Carrier's statements were false and misleading and, if those statements were false and misleading, whether they were a cause of the City's decision not to award the contract to Soderlund.

As noted above, acts of competition which are never privileged include fraud, deceit, intimidation or deliberate disparagement. (*Belden Corp. v. InterNorth, Inc.*, 90 Ill. App. 3d 547, 413 N.E.2d 98; see *Galinski v. Kessler*, 134 Ill. App. 3d 602, 480 N.E.2d 1176. See generally Restatement (Second) of Torts § 767, Comment *d*, at 28-29 (1979) (the determination of whether an act is improper is determined in each case; physical violence, fraudulent misrepresentation and threats of illegal conduct are ordinarily wrongful means).) A representation is fraudulent when, to the knowledge or belief of its utterer, it is false in the sense in which it is intended to be understood by the recipient. (Restatement (Second) of Torts § 767, Comment *c*, at 30 (1979), citing Restatement (Second) of Torts § 527 (1977).) Action-

---

[7]See footnote 6 *supra*.

able disparagement, which is a defamation of the quality of one's goods or services, also requires proof that the statement is false. (See *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 418 N.E.2d 431 (commercial disparagement action requires showing of malice and that defendant knew statement to be false or acted in reckless disregard of its truth or falsity); see generally Restatement (Second) of Torts § 623A (1977); W. Keeton, Prosser & Keeton on Torts § 128, at 975 (5th ed. 1984) (false statements of fact disparaging the quality of a competitor's goods or business are regarded as unfair competition at least where there is malice on the part of the defendant).) There is no liability for interference with a prospective contractual relation on the part of one who merely gives truthful information to another. (Restatement (Second) of Torts § 772, Comment *b*, at 50 (1979).) Matters of fact are distinguishable from expressions of opinion, and the latter cannot form the basis of an action of fraud (*Marino v. United Bank of Illinois, N.A.* (1985), 137 Ill. App. 3d 523, 484 N.E.2d 935) or an action of commercial disparagement (see W. Keeton, Prosser & Keeton on Torts § 128, at 968 ("[a] number of cases have subscribed to the view that opinion statements of competitors are not actionable").

We have reviewed the seven statements cited by Soderlund, set forth in detail above,[8] and find that, with the exception of the one statement regarding Soderlund's length of existence, there can be no factual dispute as to their falsity. Many of the statements can be characterized as Carrier's opinions, interpretations and conclusions derived from its evaluation of the submissions made by Soderlund pursuant to the City's request. Those submissions were included in the record as exhibits to Soderlund's amended complaint and in support of Carrier's motion for summary judgment. Specifically, the second and third statements identified by Soderlund as being false concerned Soderlund's failure to submit resumes of three technical personnel having a minimum six years' experience in the repair and maintenance of air conditioning machines that were the subject of the contract. Carrier's statement that it was not aware of the submission of resumes establishing that experience could never be viewed as false since a review of Soderlund's submissions shows that, while Soderlund submitted what could be characterized as resumes, those documents did not quantify the length of experience of its personnel with respect to the type of air conditioning units that were the subject of the contract. The third statement made by Carrier, with respect to Soderlund's experience with large air conditioning systems, is similarly based upon Soderlund's failure to establish that experience.

---

[8]See 278 Ill. App. 3d at 610.

As Carrier noted in the March 16 letter, several of Soderlund's listed references did not confirm, and actually contradicted, Soderlund's general statement of experience with respect to the air conditioning system in question. Interestingly, Soderlund had not alleged that the information Carrier gathered from contacting Soderlund's references was false. Since that information was not false, it can hardly be said that Carrier's statement "questioning" whether Soderlund has the experience required, which is an expression of Carrier's opinion based upon that information, is false or misleading.

The fourth and fifth statements identified by Soderlund as false and misleading concern the retubing aspect of the contract, Soderlund's admitted intention to subcontract that function, and Carrier's contention that Soderlund's subcontracting that function would violate the contract's subcontracting limitation of 25%. As noted above, in correspondence dated December 1, 1983, Soderlund expressed an intention to perform all of the contract itself. After the City requested proof of Soderlund's experience in maintenance and retubing of large air conditioning systems, Soderlund notified the City on January 2, 1984, that it would subcontract the retubing component of the contract to "one of a number of reliable companies who specialize in this type of procedure." It was based on this correspondence that Carrier concluded that, by subcontracting the retubing function, Soderlund "essentially admits a lack of experience in this area." This conclusion is a reasonable opinion based upon Carrier's interpretation of Soderlund's admitted referral of the retubing function to a company which specialized in that work and cannot be characterized as false or misleading.

The fifth statement wherein Carrier discusses the contract limitations on subcontracting also is not false. As part of that statement, Carrier estimated that, based on its 20 years' experience in the business, the retubing function of the City's contract would constitute 40% of the job overall. Carrier noted that Soderlund refused to break down its costs to show its estimates for the retubing portion. That refusal was a matter of public record and was part of the record on appeal. Since Soderlund presented no evidence, by affidavit or otherwise, to disprove Carrier's estimation or statement of fact that Soderlund's failure to break down its cost figure violated the bid requirement for such a breakdown and, since in its answers to interrogatories Soderlund admitted that it could not deny that its decision to subcontract the retubing work violated the contract limitations, there was no question of fact created as to the truth or falsity of Carrier's statements in this regard.

The sixth statement cited by Soderlund as false and misleading

concerned Carrier's "questioning" of Soderlund's ability to comply with the bid requirements regarding the stocking of parts. In correspondence to the City, Soderlund stated that it would either stock the parts or readily obtain them. Carrier noted that the bid specifications of the contract required that all spare parts be stocked within 30 days of the contract award. Based on Soderlund's own statement that it would not stock all the parts, Carrier's inference from that statement "suggesting" noncompliance with the bid specification was neither false nor misleading. Further, Carrier's "questioning" of Soderlund's ability to cover the costs of the spare parts was not presented as a statement of fact that Soderlund could not cover those costs but was an expression of opinion, which, again, was not contradicted by any submissions by Soderlund to the City or by any evidentiary matter at trial. See *Lesnik v. Estate of Lesnik* (1980), 82 Ill. App. 3d 1102, 403 N.E.2d 683 (conclusory allegations in complaint unsupported by facts admissible in evidence do not create a genuine issue of material fact).

The seventh allegedly false and misleading statement made by Carrier in the March 16 letter concerns Carrier's concluding sentence in that letter that "[i]t is Carrier's position that the above related information requires that Soderlund's bid be rejected." Clearly, this statement is one of opinion and not of fact. Moreover, the bases for this opinion were amply supported by factual matter set forth in the March 16 letter, which included the statements discussed above. Thus, as statements two through seven cannot be characterized as false or misleading, and as no material issues of fact were presented as to their falsity, those statements were not acts of improper competition so as to defeat Carrier's privileged interference with Soderlund's prospective business relation with the City.

A different analysis is required with respect to Carrier's statement as to Soderlund's length of existence since Carrier admits to its inaccuracy. While we question whether, assuming its falsity, such a statement would amount to the type of improper conduct that would defeat the privilege of competition, given the fact that Carrier noted a mistaken reference to Soderlund's 1981 date reinstatement in 1981[9] rather than its original date of incorporation (see W. Keeton, Prosser & Keeton on Torts § 128, at 974-75 (5th ed. 1984) (privilege of competition applies where defendant has genuine belief in the truth of his statement)), that issue need not be decided since it is clear from the record that the statement was not material to the City's decision to reject Soderlund's bid. See *Fellhauer v. City of Geneva*, 142 Ill. 2d

---

[9]See footnote 3 *supra*.

495, 568 N.E.2d 870; *Roy v. Coyne,* 259 Ill. App. 3d 269, 630 N.E.2d 1024 (defendant's interference must prevent plaintiff's expectancy from ripening into a valid business relationship); see generally Restatement (Second) of Torts § 766B, Comment *e*, at 23, citing § 766, Comment *h*, at 11 (1979) (interference must induce third person to choose one course of conduct over another).

As noted above, Gronkowski's affidavit submitted in support of Carrier's motion for summary judgment stated that his recommendation to William Spicer, the acting purchasing agent who made the contract award decision, that Soderlund should not be awarded the contract, was not influenced by Carrier's statement in the March 16 letter that Soderlund had been in business for only five years. That statement, which was not controverted by counteraffidavit, must be taken as true. (See *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 456 N.E.2d 958; *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) Gronkowski also stated in his affidavit that, to the best of his knowledge, the purchasing department's decision also was not influenced by that inaccurate statement. Since this latter statement by Gronkowski was not based on his personal knowledge, it was inadmissible to establish the impact of the inaccurate statement on Spicer's ultimate decision. However, since Soderlund did not object by motion to strike or otherwise to that portion of Gronkowski's affidavit, the error, if any, is waived. (*Bysom Enterprises, Ltd. v. Peter Carlton Enterprises, Ltd.* (1994), 267 Ill. App. 3d 1, 641 N.E.2d 838 (failure to object to affidavit by motion to strike or otherwise constitutes waiver of error); *Beattie v. Lindelof* (1994), 262 Ill. App. 3d 372, 633 N.E.2d 1227 (affiant can only attest to matters within affiant's personal knowledge); see 134 Ill. 2d R. 191(a).) Notwithstanding this inadmissibility, it is clear from the record that the statement regarding Soderlund's length of business operations had no impact on the City's decision since Soderlund had advised the City as to the correct length in a letter dated March 28, 1984, written in response to the March 16 letter and in a letter dated May 1, 1984. Since the inaccuracy had been corrected before the City made its contract award, it cannot be said that the inaccuracy played any material role in that decision. Thus, since the inaccurate statement did not prevent Soderlund's expectancy from ripening into a valid business relationship with the City, as a matter of law, Soderlund could not prove the tort of intentional interference with prospective business relations based upon that misstatement. (See *Fellhauer v. City of Geneva,* 142 Ill. 2d 495, 568 N.E.2d 870; *Roy v. Coyne,* 259 Ill. App. 3d 269, 630 N.E.2d 1024.) As a result the grant of summary judgment to Carrier was proper.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.