**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PAUL BRULE,

      Plaintiff - Appellant,

v.

BLUE CROSS AND BLUE SHIELD OF
NEW MEXICO, a Division of Health
Care Service Corporation, a mutual legal
reserve corporation,

      Defendant - Appellee.

No. 11-2027
(D.C. No. 1:10-CV-00835-JAP-WDS)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **EBEL,** and **MATHESON**, Circuit Judges.

Plaintiff-Appellant Paul Brule appeals the district court's dismissal of his claims

for tortious interference with prospective contractual relations and negligence pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.     BACKGROUND

## A. *Factual Background*

Because we are reviewing a dismissal under Rule 12(b)(6), the following facts are stated in the light most favorable to Mr. Brule. *See Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011). Mr. Brule is an independent insurance broker. For twelve years, he acted as a broker for Henry Productions, Inc.'s ("Henry Productions") health, dental, vision, and related insurance policies, which were all issued by Blue Cross Blue Shield of New Mexico ("BCBS"). Mr. Brule received brokerage commissions, paid by Henry Productions, for his sales of BCBS policies.

On September 24, 2008, Mr. Brule and Albert Rhodes, an employee of BCBS, met with Laurie Henry and Anita Peralta, both employees of Henry Productions, to discuss the company's annual health insurance renewal. Mr. Brule had never worked with Mr. Rhodes before this meeting. Mr. Rhodes did not complete the renewal paperwork until the night before the meeting. As a result, Mr. Brule was unable to review the documents prior to the meeting. In prior years, BCBS's employees had always given Mr. Brule time to review the renewal documents before they were presented to the client.

The renewal documents prepared by Mr. Rhodes stated Mr. Brule's commission rate of five percent at the top of every page. BCBS had never before displayed Mr. Brule's commission rate in such a manner and, according to Mr. Brule, "[s]tandard industry practice does not require disclosing that information in that manner." Aplt. App. at 2. "At the meeting, it was obvious that the Henry [Productions] representatives were

unhappy with the proposal." Complaint, at ¶ 9. After the meeting, Ms. Peralta told Mr. Brule that the publication of his commission rate at the top of each document caused Henry Productions to seek out a competing broker, Wood Agency, for its health insurance. As a result, Mr. Brule lost his longstanding account with Henry Productions.

**B.** *Procedural Background*

In 2010, Mr. Brule filed a lawsuit against BCBS in state court. He claimed that BCBS had tortiously interfered with existing or prospective contractual relations and also that it had been negligent. BCBS removed the case to federal court pursuant to 28 U.S.C. §§ 1332 and 1441. Following removal, BCBS moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted BCBS's motion and dismissed Mr. Brule's complaint with prejudice.

Mr. Brule filed a timely appeal challenging the district court's order.

## II. DISCUSSION

On appeal, Mr. Brule argues that the district court erred in dismissing his claims for tortious interference with a prospective contract and negligence. He also contends that the district court erred in dismissing his complaint with prejudice, rather than granting him leave to amend.

Because this is a diversity case, we apply New Mexico's choice-of-law rules to determine what substantive law governs Mr. Brule's claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495-97 (1941); *Pepsi-Cola Bottling Co. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). The New Mexico Supreme Court "generally . . .

applies the law of the state in which the wrongful conduct occurred." *Torres v. State*, 894

P.2d 386, 390 (N.M. 1995). Accordingly, because the injuries alleged by Mr. Brule

occurred in New Mexico, his claims are governed by New Mexico state law.[1]

### A. Standard of Review

"We review de novo a district court's dismissal of a complaint under Rule

12(b)(6)." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

We accept as true "all well-pleaded factual allegations in a complaint and view these

allegations in the light most favorable to the plaintiff." *Id.* (quotations omitted). To

survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We review a district court's decision to dismiss with prejudice for abuse of

discretion. *See U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 809 (10th Cir.

2002). "A dismissal with prejudice is appropriate where a complaint fails to state a claim

. . . and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434

---

[1]In a diversity case involving an unresolved question of state substantive law, we may either determine what the state's courts would do or certify the question to the state supreme court for review. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974) (explaining that the decision to certify a question "rests in the sound discretion of the federal court"). "[W]e will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

F.3d 1213, 1219 (10th Cir. 2006).

## B. *Mr. Brule's Tortious Interference with Prospective Contract Claim[2]*

Mr. Brule argues that BCBS tortiously interfered with his prospective contractual relationship with Henry Productions by using improper means when it published his five percent commission rate at the top of every page of Henry Productions's insurance renewal documents. In response, BCBS asserts that the disclosure of truthful information—such as an insurance broker's commission rate—cannot constitute improper means under New Mexico law and cannot be the basis for liability. We agree.[3]

To establish liability for tortious interference with a prospective contract under New Mexico law, a plaintiff must demonstrate that: (1) the defendant induced or otherwise caused a third party not to enter into or continue in a prospective contractual relation or prevented the plaintiff from acquiring or continuing the prospective relation; and (2) the defendant interfered through "improper means."[4] *M&M Rental Tools, Inc. v.*

---

[2] Mr. Brule does not appeal the district court's dismissal of his claim for tortious interference with an existing contract. We therefore limit our analysis to his claim for interference with a prospective contract.

[3] Mr. Brule also argues that BCBS acted through improper means when it published his commission rate on the renewal paperwork because this was contrary to the established business practices of the insurance industry in New Mexico. We need not and do not address this argument because we conclude that BCBS's disclosure of truthful information cannot be the basis for tort liability.

[4] New Mexico law also allows a plaintiff to allege that the defendant acted with "improper motive," which is defined as motivation solely to harm the plaintiff. *M&M*

Continued . . .

*Milchem, Inc.*, 612 P.2d 241, 244 (N.M. Ct. App. 1980).

Here, the parties concede that there was a prospective contractual relationship and that there was interference with that relationship. Our analysis of Mr. Brule's claim for interference with prospective contractual relations therefore focuses exclusively on whether BCBS acted through improper means.

New Mexico's formulation of the tort of interference with prospective contractual relations draws heavily on the Restatement (Second) of Torts. *See M&M Rental Tools*, 612 P.2d at 245-46. Section 767 of the Restatement establishes a seven-factor balancing test for determining whether a defendant's interference is improper.[5] The New Mexico Supreme Court has stated that the section 767 factors should be used to evaluate whether a defendant's interference is "improper." *Anderson v. Dairyland Ins. Co.*, 637 P.2d 837, 841 (N.M. 1981). Section 767 also identifies seven specific situations for which consensus has emerged as to the proper application of the section 767 factors. *See* Restatement (Second) of Torts § 767 cmt. a (1979) ("Sections 769-773 deal with . . . special situations in which application of the factors enumerated in this Section have

---

*Rental Tools*, 612 P.2d at 244. The parties concede that BCBS did not act with improper motive, and so our analysis is limited to the issue of "improper means."

[5]The section 767 factors are: (1) the nature of the defendant's conduct; (2) the defendant's motive; (3) the interests of the plaintiff with which the defendant's conduct interferes; (4) the interests sought to be advanced by the defendant; (5) the social interests in protecting the defendant's freedom of action and the contractual interests of the plaintiff; (6) the proximity or remoteness of the defendant's conduct to the interference; and (7) the relationship between the parties.

produced more clearly identifiable decisional patterns . . . [and] therefore supplant the generalization expressed in this Section.").

Restatement section 772 is one of the specific situations for which consensus has emerged. *See* Restatement (Second) of Torts § 767 cmt. a (1979). Section 772 states that a party who "intentionally causes a third person . . . not to enter into a prospective contractual relation with another does not interfere improperly with the other contractual relation, by giving the third person (a) truthful information, or (b) honest advice within the scope of a request for the advice." Comment b to section 772 provides that "[t]here is of course no liability for interference with a . . . prospective contractual relation on the part of one who merely gives truthful information to another."

The New Mexico Supreme Court has explicitly adopted the factors established in Restatement section 767. *See Anderson*, 637 P.2d at 841. And it has arguably implicitly adopted, and would likely explicitly adopt, section 772's rule that disclosure of truthful information cannot constitute interference by improper means. In reaching this conclusion, we note that many other courts have adopted section 772 and have refused to find improper means based on a defendant's disclosure of truthful but embarrassing or damaging facts about the plaintiff.[6]

---

[6]Courts that have considered whether disclosure of truthful information can qualify as improper means have frequently adopted section 772 of the Restatement. *See, e.g.*, *David L. Aldridge Co. v. Microsoft Corp.*, 995 F. Supp. 728, 742 (S.D. Tex. 1998); *Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*, 726 F. Supp. 1, 6 (D.D.C. 1989); *Francis v. Dun & Bradstreet, Inc.*, 4 Cal. Rptr. 2d 361, 364 (Cal. Ct. App. 1992); *Kutcher v.*

Continued . . .

-7-

BCBS disclosed only truthful information about Mr. Brule's commission rate to Henry Productions. We therefore hold that BCBS's disclosure of Mr. Brule's commission rate cannot be the basis for liability for tortious interference with a prospective contract under New Mexico law.

### C. Mr. Brule's Negligence Claim

In his second claim, Mr. Brule argues that BCBS acted negligently when it published his five percent commission rate at the top of Henry Productions's renewal documents. Under New Mexico law, a plaintiff alleging negligence must demonstrate: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty as measured by a standard of reasonable care, and (3) that the breach was the proximate cause and cause in fact of the plaintiff's injuries. *Herrera v. Quality Pontiac*, 73 P.3d 181, 186 (N.M. 2003).

Whether a duty exists is a matter of law. *Id.* To establish that a duty exists, the plaintiff must demonstrate that his or her injuries were foreseeable by the defendant and

_____

*Zimmerman*, 957 P.2d 1076, 1091 (Haw. Ct. App. 2009); *Soderlund Bros., Inc. v. Carrier Corp.*, 663 N.E.2d 1, 10 (Ill. App. Ct. 1995); *Cohen v. Battaglia*, 202 P.3d 87, 98 (Kan. Ct. App. 2009); *Glass Serv. Co., Inc. v. State Farm Mut. Ins. Co.*, 530 N.W.2d 867, 871 (Minn. Ct. App. 1995); *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co.*, 931 S.W.2d 166, 181 (Mo. Ct. App. 1996); *Montrone v. Maxfield*, 449 A.2d 1216, 1217-18 (N.H. 1982); *E. Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*, 682 A.2d 1207, 1218 (N.J. Super. Ct. App. Div. 1996); *Dryden v. Cincinnati Bell Tel. Co.*, 734 N.E.2d 409, 414 (Ohio Ct. App. 1999); *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 101 (Pa. Super. Ct. 2009); *Havsy v. Flynn*, 945 P.2d 221, 223-24 (Wash. Ct. App. 1997); *Tiernan v. Charleston Area Med. Ctr.*, 506 S.E.2d 578, 592-93 (W.Va. 1998); *Liebe v. City Fin. Co.*, 295 N.W.2d 16, 18 (Wis. Ct. App. 1980); *Allen v. Safeway Stores Inc.*, 699 P.2d 277, 280 (Wyo. 1985).

that public policy favors the imposition of a legal duty. *Id.* We conclude that New Mexico public policy would not impose a legal duty of nondisclosure regarding an insurance broker's commission rates. We therefore need not and do not address whether Mr. Brule's injuries were foreseeable by BCBS.

New Mexico law requires that public policy support the imposition of a legal duty. *See id.* Mr. Brule argues that public policy should prohibit the disclosure of a broker's commission rate on renewal documents because such nondisclosure would protect the broker from operating at a competitive disadvantage relative to other brokers. BCBS argues that New Mexico public policy encourages full disclosure of all material information in the context of insurance sales. We find BCBS's argument persuasive.

New Mexico's Unfair Insurance Practices Act ("UIPA"), NMSA 1978, §§ 59A-16-1 to -30 (2009), seeks to prohibit unfair or deceptive acts and practices in the insurance industry. The New Mexico Court of Appeals has held that insurance companies have a duty to disclose material facts about the policies they sell under the UIPA. *Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 930 (N.M. Ct. App. 2003). Additionally, New Mexico has long recognized that "both the insurer and the insured have a duty not to misrepresent or withhold information material to an insurance contract." *Id.* (citing *Modisette v. Found. Reserve Ins. Co.*, 427 P.2d 21 (N.M. 1967)). Thus, New Mexico law strongly encourages open and transparent dealings in the

insurance context, particularly with regard to material information.[7]

Mr. Brule's proposed solution—a legally recognized duty of confidentiality regarding an insurance broker's commission rate—would undermine New Mexico's goal of transparent dealings in the insurance context as evidenced in the UIPA and the state's common law.  *See* UIPA, NMSA 1978, §§ 59A-16-1 to -30 (2009); *Azar*, 68 P.3d at 930.  Accordingly, we conclude that New Mexico's public policy does not support imposing a duty of confidentiality regarding an insurance broker's commission rate and that Mr. Brule's negligence claim fails as a matter of law.

### D.  Dismissal with Prejudice

We next address whether the district court erred in dismissing Mr. Brule's claim with prejudice without granting him leave to amend.  "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

We have already determined that the truthful disclosure of Mr. Brule's commission rate cannot be the basis for liability for tortious interference with prospective contractual relations under New Mexico law.  Mr. Brule is thus unable to establish a

---

[7]We need not consider whether an insurance broker's commission rate is, in fact, material to the formation of an insurance contract.  It is sufficient to note that New Mexico law strongly encourages open and transparent dealings in the insurance context, and New Mexico's public policy would not support the imposition of a duty of confidentiality regarding an insurance broker's commission.

required element of his first claim, and amendment would not save it. Likewise, we have concluded that New Mexico's public policy does not support the imposition of a duty of confidentiality regarding an insurance broker's commission rate. Thus, even if he were allowed to amend, Mr. Brule would be unable to establish a legal duty under New Mexico law. Because granting him leave to amend would be futile, we hold that the district court did not abuse its discretion by dismissing Mr. Brule's claims with prejudice.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Mr. Brule's claims with prejudice.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

-11-